BRIAN O'MALLEY, Plaintiff-Appellant, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF ROLLING MEADOWS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—2251

Opinion filed May 8, 1989.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Thomas F. McGuire, of counsel), for appellant.

Di Leonardi & Broihier, Ltd., of Des Plaines (John C. Broihier, of counsel), for appellee Board of Fire and Police Commissioners of the city of Rolling Meadows.

Massucci, Blomquist, Brown & Judson, of Arlington Heights (Ernest R. Blomquist III, of counsel), for appellee Ralph Evans.

JUSTICE O'CONNOR delivered the opinion of the court:

Brian O'Malley, a commander in the Rolling Meadows police department, was brought before the Board of Fire and Police Commissioners of Rolling Meadows (the Board) on charges of misconduct stemming from several specific incidents that occurred from March to June 1986. The Board found O'Malley guilty and demoted him to the rank of sergeant. For the reasons below, we affirm.

On June 6, 1986, O'Malley was charged by the Board with four specific counts of misconduct. The Board charged that (1) on or about 3:30 a.m. on June 1, 1986, O'Malley received a report of an armed robbery at a hotel and, although in close proximity to the hotel, failed to respond to the call for 15 minutes; (2) on May 16, 1986, O'Malley failed to supervise or back up units responding to an altercation at a local carnival; (3) contrary to department rules, and particularly a memorandum order dated April 11, 1986, O'Malley failed properly to supervise personnel under his command by spending excessive amounts of time in the station rather than assisting and supervising the personnel on patrol; and (4) O'Malley exceeded the time allotted for meals and breaks, during which time he remained in the radio room with a female dispatcher. O'Malley was also charged with, in incidents occurring from March to June 1986, failure to respond to a call to make an arrest at a gambling party; failure to back up po-

lice at a fire at a home for the mentally physically disabled; and failure to assist in processing a suspect arrested for possession of drugs. The complainant was Rolling Meadows Police Chief Ralph Evans, whose attorney presented the case against O'Malley before the Board. Evans' attorney was neither the village attorney for Rolling Meadows, nor the village prosecutor, but was retained by the Board to represent Evans, and his service was later ratified by a resolution of the city counsel.

On February 2, 1987, the Board found O'Malley guilty as charged and demoted him to the rank of sergeant. On February 9, 1987, O'Malley filed a petition for rehearing before the Board. On March 10, 1987, O'Malley's petition for rehearing was denied. On March 30, 1987, O'Malley filed a complaint for administrative review in the circuit court, naming the Board and its members as defendants, but omitting Chief Evans.

On April 9, 1987, O'Malley moved to amend his complaint to include Evans as a defendant. On July 1, 1987, O'Malley was granted leave to amend his complaint, and the amended complaint was filed on July 2, 1987. On October 1, 1987, Evans moved to dismiss O'Malley's complaint for failure to comply with provisions of the Administrative Review Act (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 et seq.). Evans' motion was denied, and the trial court affirmed the rulings of the Board. O'Malley appeals the rulings of the Board, and Evans appeals the denial of his motion to dismiss. Because no relief is sought from Chief Evans on this appeal, we do not consider his appeal and address only the issues raised by O'Malley.

■ O'Malley first argues, without merit, that under *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the Board had no authority to hold disciplinary hearings until it had exhausted the grievance procedures prescribed by the City of Rolling Meadows Personnel Rules (the Personnel Rules). In *O'Malley v. City of Rolling Meadows* (1st Dist. 1989), No. 1—88—1396 (unpublished order under Supreme Court Rule 23), which involved the same plaintiff and the same demotion, O'Malley maintained that the Personnel Rules constituted a contract under *Duldulao*, which the defendants had breached by instituting the Board hearing before the grievance procedures were exhausted. In a Rule 23 (107 Ill. 2d R. 23) order, we affirmed the dismissal of O'Malley's action to recover fees in connection with the breach of contract action, holding that *Duldulao* was inapplicable. The Personnel Rules stated that the rules of the Fire and Police Commission superseded the Personnel Rules in the event of conflict, which we held served as

a disclaimer. We also held that the Personnel Rules did not constitute an offer sufficient to establish a contract. Thus the requirements of *Duldulao* were not met. That reasoning applies to the instant case as well.

No language in the grievance procedures of the Personnel Rules even intimates limitation, or control of, or jurisdictional prerequisite to, Board hearings. The rules of the Board of the Fire and Police Commission, promulgated under the authority of Rolling Meadows ordinances and State statute, grant the Board authority to conduct hearings and supersede the Personnel Rules where the two conflict. Even assuming applicability of the Personnel Rules, the proceeding against O'Malley would have been governed not by the grievance procedures, but by the disciplinary procedures, which are wholly separate and independent of the grievance procedures. Finally, *Duldulao* is inapplicable because it addressed a modification of the terms of traditional "at-will" employment; O'Malley's hiring and appointment were governed by statute. The Board had the authority to institute proceedings against O'Malley, regardless of the grievance procedures of the Personnel Rules.

■ O'Malley next argues that Chief Evans' attorney, Mr. Blomquist, had no authority to present the case against O'Malley and that the Board proceedings were therefore void. O'Malley contends that section 10—2.1—25 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 10—2.1—25) required the village prosecutor, and not Mr. Blomquist, to present the case against him. The actions of the Board, however, in assigning Mr. Blomquist to present the case against O'Malley met both the letter and the intent of section 10—2.1—25.

Section 10—2.1—25 states in relevant part: "The municipal attorney, in the event there is a separate attorney designated as a prosecutor for such municipality, shall represent the board unless the board is authorized by the municipality to employ its own attorney, and such attorney shall handle prosecutions before the board ***." (Ill. Rev. Stat. 1987, ch. 24, par. 10—2.1—25.) The remainder of the section addresses the situation where a municipality employs a single attorney for the functions of municipal attorney and prosecutor. Rolling Meadows employs a municipal attorney and separate prosecutor. The plain language of section 10—2.1—25 indicates that where the functions of municipal attorney and village prosecutor are performed by different attorneys, the municipal attorney shall represent the Board. The statute seeks to avoid real or apparent conflicts of interest, where the attorney who represents the interests of the Board,

and advises the Board on the law, is the same person who presents the case against the respondent; the statute seeks to prevent having the judge be the prosecutor. See *Weisenritter v. Board of Fire & Police Comm'n* (1979), 67 Ill. App. 3d 799, 385 N.E.2d 336, *appeal denied* (1979), 75 Ill. 2d 595; *Mank v. Board of Fire & Police Comm'n* (1972), 7 Ill. App. 3d 478, 288 N.E.2d 49. See also *Finin v. Board of Fire & Police Commissioners* (1981), 98 Ill. App. 3d 879, 424 N.E.2d 976, *appeal denied* (1981), 85 Ill. 2d 577.

Here, the Board was represented by the municipal attorney, and the case against O'Malley was presented by a separate attorney. Although Mr. Blomquist was not the village prosecutor, he had served in the past as a prosecutor on behalf of the village and the City Council later ratified his employment for purposes of O'Malley's hearing. The Board complied with section 10—2.1—25 by being represented by the municipal attorney and having a separate attorney present the case against O'Malley.

■ O'Malley next argues that the findings of the Board were contrary to the manifest weight of the evidence. A court of review will not reverse the findings of an administrative body unless those findings are contrary to the manifest weight of the evidence. (*Davern v. Civil Service Comm'n* (1971), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Based on the record, the findings of the Board were consistent with the evidence presented.

O'Malley asserts that he was not required to respond *immediately* to calls, but does not dispute that the gambling party, the carnival altercation, and the fire were in progress, and the hotel robbery apparently in progress, at the time he was called, nor that he waited from 15 minutes to half an hour before responding. O'Malley also asserts that his job description required him to spend time in the station as well as on patrol, and that the Board was estopped from charging him for spending excessive time in the station because no one had discussed the matter with him prior to being charged. O'Malley contends that he spent time supervising radio dispatcher Bonnie Knuppel because she was the only dispatcher on duty when there are normally two dispatchers. O'Malley does not dispute that he spent the majority of his time during several shifts supervising Ms. Knuppel.

O'Malley raises other points of fact that militate in his favor, such as the fact that experienced police personnel were at the scene of the incidents described above. But O'Malley rarely disputes, and in no case rebuts, the factual findings of the Board. The record shows

that O'Malley spent several hours of several shifts in the radio dispatch room and waited before responding to incidents in progress. The Board's findings were supported by the evidence and will not be overturned.

■ O'Malley finally argues that the misconduct of which he was found guilty did not warrant demotion, according to the Rules of the Board (the Board Rules). Review of the Board's decision to demote O'Malley shows, however, that the decision was appropriate and consistent with the manifest weight of the evidence.

O'Malley argues that the misconduct of which he was found guilty should have been judged according to the "substantial shortcoming" standard and that the Board failed to follow the standard. The Board responds that the substantial shortcoming standard applies only where a police officer is discharged from the force, citing *Adams v. Board of Fire & Police Commissioners* (1986), 144 Ill. App. 3d 905, 494 N.E.2d 728. But O'Malley properly distinguishes *Adams,* pointing out that here the substantial shortcoming standard applied pursuant to Board Rule 9.1, which states, "No police officer shall be removed, discharged, or demoted except for cause." Board Rule 9.2(c) defines "cause" as "some substantial shortcoming which renders continuance in employment in some way detrimental to the discipline and efficiency of the public service and something which the law and sound public opinion recognize as cause for the officer to no longer occupy his position." O'Malley contends that the Board did not apply the standard, making its ruling erroneous as a matter of law.

O'Malley's argument, however, relies on an inflexible construction of the Board Rules: to remove or demote an officer, his conduct must be sufficient to warrant dismissal. Because the Board Rules state that there can be no removal, discharge or demotion without cause, the substantial shortcoming standard presumably applies to the imposition of all three sanctions. It is therefore reasonable that the standard have some flexibility to enable the Board to determine the appropriate sanction. Thus, a "substantial shortcoming" sufficient to remove or demote an employee need not be as severe as that required for discharge.

The relevant issue, therefore, is whether demotion was an appropriate sanction, given O'Malley's misconduct. The Board determined that it was, and the court should reverse only where the decision of the Board was contrary to the manifest weight of the evidence. See *Davern v. Civil Service Comm'n* (1971), 47 Ill. 2d at 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.

O'Malley contends that the court should consider that prior to the instant case, his 17-year record with the Rolling Meadows police force was unblemished. The Board notes that O'Malley's past record was considered in choosing to demote, rather than discharge, him. The Board apparently chose to demote O'Malley because his conduct showed that, although an able police officer, he was not an able commander. O'Malley also contends that the calls affected by his actions were but a small percentage of the total calls that the police responded to during the period from March to June 1986 and that, therefore, the service to the public was not greatly affected. This argument would be valid only if all calls to the police department were equally important, or equally threatening to the safety of the community. Obviously they are not.

The problems with O'Malley's conduct, such as failing to perform assigned duties and failing to communicate with his subordinates, created problems of a potentially continuous nature, affecting the operation of the police force and its service to the community. The sanction of demotion was appropriate to the degree of misconduct. The Board acted promptly in charging O'Malley and in holding hearings. Its decision was not contrary to the manifest weight of the evidence.

In summary, the Board had proper jurisdiction to hold disciplinary proceedings; it complied with State statute in ensuring that conflicts of interest were avoided and O'Malley's due process rights were preserved, and its factual findings and decision to demote O'Malley were consistent with the manifest weight of the evidence. We therefore affirm the findings and decision of the Board.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.