JEANNE KVIDERA, Plaintiff-Appellee and Cross-Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF SCHILLER PARK *et al.,* Defendants-Appellants and Cross-Appellees.

First District (3rd Division)    Nos. 1—88—3170, 1—88—3183, 1—88—3490 cons.

Opinion filed December 27, 1989.

952

Harry J. Smith, Jr., of River Grove (Lawrence J. Czepiel, of counsel), for appellants.

Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Following an administrative hearing, the Board of Fire and Police Commissioners of the Village of Schiller Park (Board) found plaintiff, Jeanne Kvidera, guilty of violating various rules and regulations of the Schiller Park police department. Plaintiff was charged with 10 counts of misconduct and found guilty of using verbally abusive language to a civilian (count I), assisting in the composition of a letter which alleged marital infidelity of the husband of a candidate for the school board (count II), and attempting to impede the police department's investigation of her involvement in those incidents (count III). The Board ordered plaintiff suspended for 30 days on each of the first two counts and discharged on the third count.

On administrative review, the circuit court sustained the Board's findings of fact, but reversed the penalties imposed and remanded the case to the Board for the imposition of an "appropriate lesser sanction." On remand, the Board reconsidered the charges and determined that the penalties which had originally been imposed were appropriate. The circuit court refused to confirm the penalties. Thereafter, the Board appealed the order of the circuit court and plaintiff cross-appealed. The appellate court, in dismissing both appeals, stated that in the absence of a contempt citation, in order to have an appealable order, the circuit court should either affirm or direct the Board to impose a specific sanction. (*Kvidera v. Board of Fire & Police Commissioners* (1988), 168 Ill. App. 3d 380, 522 N.E.2d 757.) The circuit court then remanded the case to the Board with orders to impose a maximum penalty, exclusive of termination, on all counts and to reinstate plaintiff in her position with the department. The Board complied with the order of the court and imposed a penalty of 30 days' suspension, considered served, on all counts.

The Board appeals from this order, contending that the trial court erred by reversing its decision to discharge plaintiff for impeding an official investigation, and in the alternative, by not allowing it to impose a penalty of discharge on all three counts. Plaintiff cross-appeals, contending that (1) the Board did not have jurisdiction over her to conduct the hearing, (2) the Board's findings of guilt were against the manifest weight of the evidence, and (3) the Board did not have au-

thority to both suspend and discharge her. We affirm in part, reverse in part, and modify.

Plaintiff, a patrol officer with the Schiller Park police, testified that on August 28, 1985, she, Josephine Balgro and Nancy Selvaggio were at a restaurant in Glendale Heights. Balgro told plaintiff and Selvaggio that she was upset that a member of the Schiller Park school board, Irene Del Guidice, had told Balgro's husband that she (Balgro) was having an extramarital affair. As a means of allowing Balgro to vent her feelings, the three ladies began to compose a letter. As the three of them developed ideas for the letter, Balgro wrote them down on a napkin. According to plaintiff, Balgro would decide what she wanted to say and plaintiff would then rephrase it. After the letter had been composed on the napkin, Balgro asked plaintiff if she would type it for her. Plaintiff refused; however, Selvaggio consented. Plaintiff testified that, on the night the letter was composed, the three of them talked about sending it to members of the school board, but there was no definite intent to mail it. In an earlier statement, which plaintiff made during the course of the police investigation, she stated that she knew that the letter would be sent to Del Guidice. The letter, which was included as a part of the record, alleged that the husband of Vicki Caliendo, a candidate for the Schiller Park school board, was having an extramarital affair. The letter also stated that because of Mr. Caliendo's conduct, Vicki Caliendo was a poor choice for the school board, and that unless Del Guidice reconsidered sponsoring Caliendo as a member of the board, copies of the letter would be sent to the local newspaper. The concluding statement in the letter was that it would be sent to the other members of the school board. Plaintiff stated that on occasion, she had telephoned Balgro to inquire whether the letter had been mailed; however, she did not see the typewritten letter until after the police department had begun its investigation.

On September 4, 1985, at about 8:30 a.m., plaintiff was issuing parking tickets when Vicki Caliendo drove up to where she was standing. Caliendo indicated to plaintiff that she knew about the letter and that the "war was on." When Caliendo persisted in yelling and screaming, plaintiff made verbally abusive comments to her. Plaintiff stated that she invited Caliendo to talk the matter over, but that Caliendo's response was that she was going to get plaintiff on a charge of conduct unbecoming an officer and sped away. Plaintiff immediately reported the incident to her superior. She was subsequently informed that the Caliendos had lodged a formal complaint against her and had alleged her involvement in the letter to the school board.

Plaintiff stated that she told Balgro that she (Balgro) had gotten

her into a lot of trouble with the letter and that there would be an investigation. She stated that she probably told Balgro to deny involvement in the letter in order to protect her (Balgro), since it was Balgro who had physically written it. Plaintiff did not remember telling Belgro that the police could not prove anything.

Balgro testified that it was plaintiff's idea to write the letter for the purpose of "getting even with people." It was agreed that the letter would be sent anonymously. While Balgro suggested that the letter be sent to the members of the school board, it was plaintiff who suggested that it be sent to Del Guidice. Balgro sent the letter to the seven members of the Schiller Park school board. She testified that from time to time, plaintiff would inquire of her as to whether she had mailed the letter, but that plaintiff did not encourage her to do so. Balgro also stated that on one occasion, when plaintiff asked whether the letter had been mailed, plaintiff remarked that it had been quiet and that she had not heard anything. According to Balgro, plaintiff told her to deny any knowledge of the letter because it was plaintiff's job on the line; that if Balgro denied it, the police investigator would not know anything about it; and if Balgro would claim responsibility for the letter, then the police investigation would end.

Nancy Selvaggio testified that on the evening in the restaurant, it was plaintiff who brought up the extramarital affair of Caliendo's husband. As plaintiff spoke, Balgro wrote down her statements. Selvaggio did not recall whether the plan to mail the letter was discussed at that time.

Vicki Caliendo testified that she, her husband and their eight-year-old daughter were residents of Schiller Park. On August 30, 1985, she received a copy of the letter which plaintiff had allegedly dictated. On September 4, Caliendo and her daughter drove up to where plaintiff was standing. After commenting to plaintiff concerning the letter, plaintiff verbally abused her. According to Caliendo, her daughter, who was in the front of the car, heard the exchange between her and plaintiff. Plaintiff was in uniform at the time of the incident. Caliendo also testified that her husband was a policeman in the Village of Franklin Park and that he had been a reserve officer in Schiller Park.

The Board found plaintiff guilty of three counts and imposed penalties of both suspension and discharge. On administrative review, the circuit court held that the findings of the Board were not against the manifest weight of the evidence; however, the court found the penalties to be excessive.

■ Initially, we address plaintiff's contention, in her cross-appeal, that the Board lacked jurisdiction to conduct a hearing on the charges

filed against her. Plaintiff first argues that the Board failed to commence the hearing within the time required by law. Section 10—2.1—17 of the Illinois Municipal Code provides, in pertinent part:

"The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time." (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17.)

In the case at bar, the charges were filed on February 25, 1986, and the hearing was scheduled to commence on March 17, 1986. Plaintiff argues that the March 17 "hearing" was continued to March 29 at the request of the superintendent of police (complainant). Therefore, she maintains, the March 29 hearing, which commenced two days after the running of the statutory 30-day period, was improper. Plaintiff argued vigorously below that the March 17 proceeding was not a hearing.

Our review of the record reveals that at the proceeding on March 17, the parties discussed complainant's compliance with plaintiff's discovery requests; plaintiff requested additional discovery to include proof of the Board's 1960 publication of the rules which it had adopted in that year; the parties entered into a stipulation to admit evidence at a later time during the hearings; and plaintiff presented a written motion to dismiss. Plaintiff acknowledges that she presented the motion to complainant only 10 minutes prior to the commencement of the proceedings that evening. Complainant requested additional time to prepare a response to the motion. The proceeding was then continued to March 29. Plaintiff voiced no objection to the continuance. Witnesses, who had been subpoenaed and were present, were dismissed for the evening.

The proceeding was recommenced on March 29, at which time complainant sought to amend the complaint and moved to dismiss one of the counts against plaintiff. Plaintiff then presented an oral motion to dismiss on the grounds that the hearing had not commenced within the statutory mandated time frame. Plaintiff's motion was denied.

The statutory 30-day limit, within which time the hearing is to commence, is mandatory, and failure of the Board to comply with the terms of the statute divests it of jurisdiction over the case. (*Sullivan v. Board of Fire & Police Commissioners* (1988), 170 Ill. App. 3d 255, 258, 524 N.E.2d 733; *Carrigan v. Board of Fire & Police Commissioners* (1984), 121 Ill. App. 3d 303, 459 N.E.2d 659.) However, where the delay in commencing the hearing within the 30-day period is not attributable to the Board, but rather to the plaintiff, the statute is not violated. *Massingale v. Police Board* (1986), 140 Ill. App. 3d 378, 381, 488

N.E.2d 1289; *Riggins v. Board of Fire & Police Commissioners* (1982), 107 Ill. App. 3d 126, 437 N.E.2d 327.

A delay has been found to be attributable to the plaintiff where the plaintiff has made a voluminous discovery request (*Riggins*, 107 Ill. App. 3d at 129), or where the plaintiff requests a continuance (*Massingale*, 140 Ill. App. 3d at 381). However, regardless of the exact cause, the relevant inquiry is whether the delay was the result of the plaintiff's behavior or, in the alternative, whether it was attributable to the Board. *Perez v. Civil Service Comm'n* (1987), 153 Ill. App. 3d 176, 182, 505 N.E.2d 1067.

■ Here, the hearing was originally set to commence on March 17, a time well within the statutory time period. While the proceeding on the 17th most resembled a pretrial hearing on motions and other preliminary matters, we need not characterize it since that fact is not dispositive of the issue. Clearly, the Board required additional time to search out proof of the 1960 publication and complainant required time to adequately prepare a response to plaintiff's motion. Plaintiff asserts that as evidence of the Board's dilatory conduct, by the time of the March 29 proceeding, complainant had not prepared a written response to the March 17 motion and that he was attempting to amend the complaint. These facts are of no import. Our review of the record reveals that at the March 29 proceeding complainant stated that he was prepared to respond to plaintiff's March 17 motion. Further, complainant's proposed amendments to the complaint, which included correcting the date that plaintiff dictated the letter, were minor and would not have necessitated a delay in the proceedings. There is no indication in the record that, but for plaintiff's eleventh-hour motion to dismiss, the hearing would have proceeded on March 17 as planned. We also note that plaintiff acquiesced in the decision to continue the matter. Moreover, the fact that the March 17 hearing was scheduled not more than 20 days after the charges were filed serves to further negate plaintiff's contention that the Board was dilatory. We conclude that the delay, if any, in the commencement of the hearing was attributable to plaintiff and the Board properly retained jurisdiction over this dispute.

Plaintiff alludes to the fact that the hearing could have been rescheduled within the 30-day period, but the Board chose to continue it until two days beyond that period. Once a delay in the initial hearing date is occasioned by the actions of the plaintiff, the statute is silent as to when the next hearing date must be set. (*Sullivan*, 170 Ill. App. 3d at 261.) The Board must retain some control and flexibility over the scheduling of hearings once the 30-day mandate is waived by plaintiff's

actions. *Sullivan,* 170 Ill. App. 3d at 261.

■ As a further jurisdictional attack, plaintiff argues that attorney Nolan, who represented the superintendent of police at the March 17 proceeding, did so without legal authority. Therefore, she urges, any action taken by the Board as a result of his representation was a nullity. Plaintiff relies on section 10—2.1—25 of the Illinois Municipal Code, which provides, in pertinent part:

> "Attorney for the Board. The municipal attorney, in the event there is a separate attorney designated as a prosecutor for such municipality, shall represent the board unless the board is authorized by the municipality to employ its own attorney, and such attorney shall handle prosecutions before the board, but in the event that the municipal attorney shall both represent the municipality and be prosecutor in such municipality, then and in such event the governing body is hereby authorized to employ an attorney of its own choosing to represent said board." (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—25.)

The plain meaning of the statute is that where the functions of the village attorney and the municipal attorney are performed by different attorneys, the municipal attorney shall represent the Board. The purpose of the statute is to avoid conflicts of interest where the attorney who represents the interests of the Board is the same person who presents the case against the respondent. (*Finn v. Board of Fire & Police Commissioners* (1981), 98 Ill. App. 3d 879, 424 N.E.2d 976; *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 485, 288 N.E.2d 49.) In the instant case, the Board was represented by separate counsel, and attorney Nolan represented the superintendent of police as the prosecutor in this matter. Plaintiff does not argue that she was prejudiced by attorney Nolan's representation of the superintendent, nor does she argue that Nolan impermissibly acted as both prosecutor and judge. She argues only that since attorney Nolan was not the attorney for the municipality, he was the wrong attorney. Plaintiff claims that since the Village of Schiller Park is not a home rule municipality, and since there was no ordinance which superseded the State statute, the village was without authority to appoint attorney Nolan. Plaintiff relies on *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95, as support for her argument. *Stryker* is inapposite. *Stryker* concerned the authority of a home rule municipality to enact ordinances which would change the statutory qualifications for members of the board of fire and police commissioners, and give authority to the village manager to appoint the chief and deputy

chiefs of police. (62 Ill. 2d 523.) The issue raised by plaintiff's argument and framed by her reliance on section 10—2.1—25 is whether the substitution of attorney Nolan, as the prosecutor, was in compliance with the State statute, not whether the village had authority to enact ordinances.

■ Here, as plaintiff correctly argues, the village was bound to comply with the State statute. We fail to see how its decision to appoint attorney Nolan to prosecute contradicts the terms of the statute. Further, acceptance of plaintiff's argument would mean that a village, bound by the statute, could at no time substitute or appoint other legal counsel, even in instances where the village prosecutor is absent, ill, unavailable, or is confronted with a conflict. We do not read the statute as either expressly or implicitly negating the authority of the municipality to substitute legal counsel, and absent statutory language so prohibiting, we decline to do so.

This very same argument was recently considered and rejected in *O'Malley v. Board of Fire & Police Commissioners* (1989), 182 Ill. App. 3d 1019, 1023, 538 N.E.2d 888. At oral argument, plaintiff distinguished *O'Malley* on the basis that the municipality in that case, unlike here, was a home rule unit. While plaintiff's distinction may be accurate, we note that in its resolution of this issue, the court, in *O'Malley*, made no reference to the municipality there as being under home rule. Therefore, we believe that the issue in *O'Malley* did not turn on home rule status, but rather, on whether the actions of the village comported with due process and legislative intent. We believe that the Board here acted in compliance with the terms and the intent of the statute. It hired a separate attorney as its representative, and Nolan was given authority to represent the superintendent. Moreover, although Nolan was not the attorney for the municipality on the date that these proceedings were commenced, the village board subsequently ratified his employment as prosecutor for purposes of this hearing. Accord *O'Malley*, 182 Ill. App. 3d at 1023.

■ Plaintiff next contends that the Board's findings on each of the charges were against the manifest weight of the evidence. The scope of review of an administrative agency's decision is a two-step process. (*Carrigan*, 121 Ill. App. 3d at 308.) Initially, the court must determine whether the agency's findings of fact are against the manifest weight of the evidence. The court must then determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885.) Findings of an adminis-

trative agency on questions of fact are to be held *prima facie* true and correct (Ill. Rev. Stat. 1985, ch. 110, par. 3—110), and where an opposite conclusion is not clearly evident, the decision cannot be reversed (*Everly v. Chicago Police Board* (1983), 119 Ill. App. 3d 631, 637, 456 N.E.2d 992; *Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 391 N.E.2d 190). That an opposite conclusion might be reasonable is not sufficient. (*Keen*, 73 Ill. App. 3d at 70.) Further, conflicts in testimony and the credibility of witnesses are properly left for the Board to resolve. (*Price v. Board of Fire & Police Commissioners* (1985), 139 Ill. App. 3d 333, 339, 487 N.E.2d 673.) In order to reverse the Board's findings as being against the manifest weight of the evidence, we must be able to say that "all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding[s], would agree that the finding[s] [are] erroneous." *Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 287, 509 N.E.2d 467.

■ Plaintiff urges several points to support her argument that the Board's findings were against the manifest weight of the evidence. However, we believe that her testimony alone was sufficient to support the Board's findings. Plaintiff admitted her involvement in the charged misconduct. It is clear from the record that she verbally abused Caliendo. The fact that Caliendo might have been acting in an uncontrolled manner and that she had been exposed to abusive language in the past neither negates nor excuses plaintiff's management of the situation. Also, from the testimony, the Board could have found that, even though plaintiff did not physically mail the letter, she had some interest, other than Balgro's need to vent, to see that the letter was mailed. Additionally, plaintiff admitted that she asked Balgro to deny her (plaintiff's) involvement in the incident. Finally, we are not persuaded by plaintiff's testimony that her advice to Balgro to deny knowledge of the letter was for the benefit of Balgro. Based on this evidence, we cannot conclude that the Board's findings were against the manifest weight of the evidence.

Prior to our examination of the reasonableness of the penalties imposed, we will address plaintiff's final argument that the Board did not have authority to both suspend and to discharge her. Plaintiff relies on *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, and *Le Desma v. Village of Burr Ridge Board of Fire & Police Commissioners* (1978), 60 Ill. App. 3d 768, 377 N.E.2d 319, as support for this argument. The case at bar is distinguishable from both *Burton* and *Le Desma*. In *Burton*, our supreme court held that the discharge of the plaintiff was not permissible where a 10-day suspension, which

was intended as the final disciplinary action, had already been imposed. (*Burton*, 76 Ill. 2d at 526-27.) The court held that where the entire course of misconduct was known to the department head when the penalty was initially decided, and the final determination was based on all of that misconduct, the Board could not subsequently modify or enhance the penalty by dividing the conduct into component parts. (*Burton*, 76 Ill. 2d at 523-28.) Likewise, in *Le Desma*, the chief of police imposed the penalty of a five-day suspension without pay, which was intended as a final disciplinary determination. (*Le Desma*, 60 Ill. App. 3d at 774.) The police commission was subsequently precluded from imposing other, more substantial, penalties for the same conduct which had been considered in deciding the initial penalty. (*Le Desma*, 60 Ill. App. 3d at 774.) In the instant case, the Board sought to impose separate sanctions for each of the three different incidents of misconduct. In *Burton* and *Le Desma*, there was àn attempt to impose additional penalties on the plaintiffs for conduct which had previously been considered in the determination of a penalty. Here, there was no later attempt to reconsider, modify or to enhance a prior disciplinary action.

In this court's earlier opinion in *Burton v. Civil Service Comm'n* (1978), 57 Ill. App. 3d 835, 844, 373 N.E.2d 765, *aff'd* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, we left this issue unresolved. We note that while the language in the supreme court's opinion affirming *Burton* concerned the division of conduct into component parts, we do not interpret that language to imply that the Board, after a hearing and upon finding a plaintiff guilty of multiple charges, has authority to impose a separate 30-day suspension and discharge for each of the charges. The conduct sought to be avoided, and addressed in the narrow holding of *Burton*, was the imposition of additional penalties for conduct for which penalties had already been imposed.

The Board maintains that its authority to both suspend and to discharge plaintiff for each of the separate acts of misconduct is provided by statute. The relevant portion of the statute states:

> "In case an officer or member is found guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay." (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17.)

The parties have not cited to any authority construing this particular portion of the statute and our research has revealed none. Thus, we must rely on the rules of statutory construction to determine the extent of the Board's authority.

■ The primary rule of statutory construction is that the intent of the legislature should be determined and given effect. (*Sullivan v.*

*Board of Fire & Police Commissioners* (1988), 170 Ill. App. 3d 255, 261, 524 N.E.2d 733.) The language of the statute must be given its plain and ordinary meaning (*People v. Pettit* (1984), 101 Ill. 2d 309, 313, 461 N.E.2d 991), and the sole function of the court is to interpret the law as it was enacted by the legislature (*In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 120, 477 N.E.2d 488). It is not the function of the court to annex new provisions or to substitute different ones, or to read into statutes exceptions, limitations or conditions which depart from its plain meaning. (*Sullivan*, 170 Ill. App. 3d at 261.) Further, the court must be mindful that the legislature, in passing legislation, did not intend absurdity, inconvenience, or injustice. *Donnelly v. Edgar* (1987), 117 Ill. 2d 59, 66, 509 N.E.2d 1015.

■ The language of section 10—2.1—17 is clear. The penalty, based upon a finding of guilt, may either be suspension or discharge, but not both. We believe that it was the intent of the legislature to design a scheme of disciplinary actions whereby misconduct of a serious nature would result in the more severe punishment of discharge, and less serious infractions would warrant suspension. We do not read the statute as giving authority for piecemeal imposition of disciplinary action beyond the limits as set by the statute. Had the legislature so intended, they could have included language that for each violation, included within a course of misconduct, suspensions and discharge may be imposed. Assuming, *arguendo*, as in the case at bar, that the Board is permitted to impose a penalty of suspension followed by discharge, the practical effect of such a scheme of punishment would be to impose a constructive discharge at the moment the suspension is effected.

We also decline to accept that the legislature intended to permit the imposition of more than one 30-day suspension as a final disposition for a course of misconduct. We note that a 30-day suspension without benefit of pay is a harsh penalty. To permit the imposition of consecutive 30-day suspensions effectively defeats the statutory limitation. (See *Cappitelli v. Rodewald* (1988), 171 Ill. App. 3d 875, 525 N.E.2d 1037 (120-day suspension of fireman not permitted by statute for act of misconduct).) We believe that plaintiff's acts of misconduct, though necessarily considered separately for purposes of making a determination of guilt, must be considered in the aggregate to determine which of the alternative sanctions is warranted based on the findings.

■ Having determined that only one disciplinary action is permissible, we must decide the effect of the Board's attempt to impose both sanctions. The Board urges that if only one sanction is permissible, then it should be discharge. Plaintiff argues, relying on *Burton*, that when the Board suspended her, that was the extent of the punishment

allowed and the subsequent termination was a nullity. We disagree. It is clear from the record that the Board did not intend that plaintiff return to her position with the police department. The Board's attempt to impose the suspension, followed immediately by discharge, effectively discharged her; thus, only one penalty was imposed for the total of her misconduct.

● 10, 11 Finally, the Board contends that the trial court erred in reversing its decision to discharge plaintiff based on the finding of guilt that she impeded an official investigation. In the alternative, the Board argues that the court erred in not permitting it to decide on a penalty of discharge in consideration of plaintiff's guilt on all three charges. Contrarily, plaintiff argues that the decisions to suspend and to discharge were arbitrary and capricious. A police officer may only be discharged for cause. (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17.) Cause has been defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer holding that position. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511; *Schlobohm v. Rice* (1987), 157 Ill. App. 3d 90, 510 N.E.2d 43.) While the Board is afforded considerable discretion in determining what constitutes cause for discharge (*Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 394, 362 N.E.2d 1098), its determination is subject to judicial review (*Burgett v. Collinsville Fire & Police Commissioners* (1986), 149 Ill. App. 3d 420, 424, 500 N.E.2d 951). Where the Board's findings are so trivial as to be unreasonable or arbitrary or are so unrelated to the requirements of the service, reversal is warranted. (See, *e.g., Christenson v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 472, 404 N.E.2d 339 (discharge reversed where plaintiff found to have driven his vehicle outside city limits for nonofficial purpose and subsequently lied regarding the improper use); *Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049 (discharge reversed where police officer found to have failed to tell his superior that his reason for attending court related to a personal matter and for failure to obey his superior's command); *Burgett*, 149 Ill. App. 3d 420 (discharge reversed where officer found guilty of secreting himself and patrol car outside city limits and for failure to perform his patrol duties for a three-hour period).) Under this rule, the Board's decision will stand even if the court considers another sanction more appropriate. *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258, 449 N.E.2d 845.

While we have found no cases in which the conduct warranting discharge directly parallels the facts in the present case, our review of cases with some similar acts of misconduct has provided some guidance. In *Nation v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 384, 385, 352 N.E.2d 464, the plaintiff was found guilty of the unauthorized entry into a co-worker's locker. In the locker, among other things, the plaintiff found a black book which contained allegations against him and some other officers. (*Nation*, 40 Ill. App. 3d at 385.) The plaintiff also found letters of a personal nature written to the co-worker from a married woman. Plaintiff made copies of the letters and arranged for them to be delivered to the woman's husband. (*Nation*, 40 Ill. App. 3d at 385.) In affirming the Board's order of discharge, the appellate court stated that the plaintiff had failed to uphold the high standards and duties of his office and that the scandal which his actions helped to create could easily undermine public confidence in the police force and decrease its effectiveness. *Nation*, 40 Ill. App. 3d at 387-88.

In *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 553-54, 336 N.E.2d 573, the plaintiff's discharge was upheld where there was a finding that he had solicited a bribe from a traffic violator and subsequently attempted to persuade the witness to abandon his charges and to change his story. The plaintiff also requested that the witness write a letter to the police department to say that the plaintiff was not the officer involved. (*Crowell*, 32 Ill. App. 3d at 552.) On administrative review, the court held that the Board's finding that the plaintiff's conduct impeded the police department's efforts of "achieving its goals of maintaining honesty and integrity within the [d]epartment" and its order to discharge him were neither improper nor inappropriate. *Crowell*, 32 Ill. App. 3d at 557.

We do not equate plaintiff's conduct here with that of the plaintiffs in *Nation* and in *Crowell*; however, we do believe that, taken all together, plaintiff's conduct could have the effect of undermining the public confidence in the Schiller Park police department and impeding the department's efforts to maintain honesty and integrity. Plaintiff argues that there was no evidence that the private use of the abusive words to Caliendo was inconsistent with the image of a police officer or that Caliendo had any less respect for plaintiff as a result of this encounter; that her conduct in composing the letter was done when she was off-duty; and that there was no evidence that her conduct resulted in disrespect by the public for the department or that the public confidence in the department was impaired. We find plaintiff's arguments to be unpersuasive. The Board responds that the Schiller

Park community is small and that these incidents caused some notoriety. The Board maintains that plaintiff's conduct had a tendency to destroy public respect and to adversely affect the lives of many individuals. We agree.

Plaintiff's remarks to Caliendo were intended to be harsh and offensive. We do not think that it would be unreasonable for the police department to expect that a trained police officer, dealing with emotionally charged situations, such as the one presented here, would exercise some degree of restraint. Further, plaintiff's participation in the development of the letter and her subsequent interest in its distribution created a situation which caused public embarrassment to the individuals named therein. Her attempts to silence Balgro during the course of the police investigation raise serious questions concerning her integrity and trustworthiness. These acts of misconduct by a police officer are not to be lightly taken.

Plaintiff cites this court to several cases wherein the court has found discharge to be an excessive punishment. Specifically, plaintiff cites to *Kreiser* (69 Ill. 2d 27, 370 N.E.2d 511) and to *Christenson* (83 Ill. App. 3d 477, 404 N.E.2d 339), where the reviewing court held that discharge was not required for a police officer having given a false statement. We note, as did the trial court, that the conduct in these cases, and others cited by plaintiff, involved members of the police department, but not the public. While we agree that the use of the abusive language and the participation in the composition of the letter standing alone might not warrant dismissal, we believe that plaintiff's conduct as a whole was not such a trivial matter as to be unreasonable and arbitrary grounds for her discharge.

For the foregoing reasons, we affirm that part of the circuit court's decision regarding the Board's jurisdiction and its findings that the evidence was not against the manifest weight of the evidence. We reverse the court's order to the Board to impose a penalty exclusive of termination and, consistent with this opinion, we modify the Board's disciplinary decision to impose a penalty of discharge.

Affirmed in part; reversed in part and modified.

WHITE and CERDA, JJ., concur.