ANDREW REMUS, Plaintiff-Appellant, v. MICHAEL F. SHEAHAN, Sheriff of Cook County, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—06—0756

Opinion filed January 22, 2009.

Schenk, Duffy, McNamara, Phelan, Carey & Ford, of Joliet (Joseph R. Mazzone, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Patrick M. Blanchard, and Craig M. Sandberg, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE STEELE delivered the opinion of the court:

The Cook County sheriff (the Sheriff)[1] petitioned to dismiss Andrew Remus from his employment with the police department due to alleged misconduct that occurred on June 2, 1999. The Cook County Sheriff's Merit Board granted the petition. Remus contends on appeal that the evidence does not support the Board's findings that alcohol impaired his mental ability on the night in question and that he violated departmental reporting rules. He also contends that his misconduct does not justify dismissal. We find the evidence sufficient to support the Board's findings of fact. We also cannot say that the Board acted arbitrarily or capriciously when it dismissed Remus for his misconduct.

---

[1]The current Cook County Sheriff is Tom Dart. He is substituted for Michael Sheahan as a defendant in this action. See 735 ILCS 5/2—1008(d) (West 2006).

## BACKGROUND

Andrew Remus joined the Cook County sheriff's police department in 1991. He received three citations for his work. The department neither reprimanded nor suspended him before 1999. On June 2, 1999, he finished his work for the gang unit at 4 p.m. He carried his gun when he met Anthony Bohling, Tom Lanigan, and two other members of the department. The five officers rode together in Bohling's car to attend a fund-raiser at Comiskey Park. Remus placed his loaded gun into the frame of the back seat of Bohling's car. Remus knew that department rules disallowed securing his weapon in that manner.

Remus drank beer at the fund-raiser. He and the same four other officers decided to go to a bar. They again took Bohling's car. They arrived at the bar around 10 p.m. Remus drank more beer before they left the bar around 11 p.m. After leaving the bar, Bohling drove east on 167th Street, with Remus and the three other officers in the car.

Cory Simmons, driving his girlfriend home, turned onto 167th Street, and in doing so, he apparently cut off Bohling. An officer yelled out the window, "Nice work, bonehead." Angry words followed. The officers chased Simmons as he sped and ran stoplights on a twisting route that ran several miles through side streets, past several pedestrians. One of the officers used his cell phone to call *999. Lanigan fired several shots. One shattered a window of Simmons's car. Simmons drove to the police station in Robbins, Illinois.

Johnny Holmes, chief of the Robbins police department, questioned Simmons and the officers. Holmes asked each officer whether that officer had fired his gun at the car. All, including Lanigan, said no. Holmes told the officers he needed to confiscate their guns for ballistics testing. Remus said, "No motherfucker is going to take my weapon." He later apologized for the remark. During further questioning, Remus told investigators he saw muzzle flashes coming from Simmons's car.

For the following three years, Remus continued working for the department while officers investigated the incident. The Sheriff formally sought to terminate Remus's employment with the department in June 2002.

The Cook County Sheriff's Merit Board conducted hearings on the charges in 2003. Remus said he did not intend to drink at the fundraiser. He drank two beers there and two more at the bar. At the intersection where the altercation with Simmons began, according to Remus, Simmons threw a paint can that hit Bohling's car. Investigators found no signs of corresponding damage to Bohling's car. Remus swore he heard shots coming at Bohling's car. When he heard the

shots, he took his gun from the seat frame and put it in his pants. During the chase another car got into the way of Bohling's car. Remus said, "Knock *** the fuckers off the road."

The administrative law judge listened to a tape recording of the call one of the officers made to *999. The tape included the sounds of Lanigan shooting. An officer said, "Shots fired!" Remus, laughing, said, "I like that ... boom, boom, boom." Later he exclaimed, "Kill him! Kill him! Fuck them!"

Investigators found the bullets discharged from Lanigan's gun and no other bullets. Department procedures required a call to the communications center whenever an officer fired his gun. Remus admitted he lied to investigators when he told them he saw muzzle flashes from Simmons's car. After he spoke to the investigator, he called his union. At trial he explained, "I wasn't going to answer anything until I *** spoke to my attorney."

Several witnesses, including Remus's supervisor, interacted with him at the fund-raiser and at the bar. They said he did not appear inebriated.

The Board adopted the Sheriff's proposed findings of fact. The Board held that Remus violated the department's rule prohibiting officers from carrying guns while off duty when the officers might drink alcohol. The Board found that Remus's remarks, recorded on the tape, showed actual impairment of his mental ability.

Remus admitted he violated the rule requiring each officer to always store his gun, when not in use, in a secure place under lock and key. The Board found a separate violation of the rule requiring all officers to report discharge of firearms for any purpose other than routine target practice. Three separate rules generally allow the Sheriff to discipline any officer whose actions discredit the integrity of the department. The Board held that Remus's conduct on June 2, 1999, violated all three rules.

The Board added a finding that Remus violated General Order 99—03, effective April 30, 1999, which provides:

> "An officer will only engage in a motor vehicle pursuit when the following conditions are met.
>
> a) *** If in an unmarked vehicle the siren and internal rotating red light are activated.
> ***
>
> c) Notification has been made to the Communications Center radio band operator that the officer is initiating a vehicle pursuit."

The Board found that the violations justified the decision to dismiss Remus. The trial court, on administrative review, affirmed the Board's decision. Remus now appeals.

## DISCUSSION

The appellate court reviews the decision of the Board, not the trial court's judgment. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560 (2004). We will reject the Board's findings of fact only if the manifest weight of the evidence contradicts the Board's findings. *Yeksigian v. City of Chicago*, 231 Ill. App. 3d 307, 310 (1992).

Remus first challenges the finding that alcohol impaired his mental abilities on the night of June 2, 1999. He relies on testimony that he did not appear intoxicated. The Board answers that the finding of actual impairment has no bearing on the rule violations. The Board found a violation of the Rules and Regulations of the Cook County Sheriff's Police Department (Department Rules), Department Rule 10.4, which provides:

> "Officers of the Department are instructed to refrain from carrying firearms during non-duty hours when there is a likelihood that they will be consuming alcoholic beverages or using legally prescribed drugs which may impair their physical or mental ability."

We agree with the Board that an officer may violate Department Rule 10.4 even if the officer suffers no actual impairment. Remus, while off duty, carried his gun with him in the car when he went to Comiskey Park and a bar, where "there [was] a likelihood" he would consume alcohol, and alcohol "may impair" his physical or mental ability. The rule specifically directs officers to refrain from carrying their guns in such situations, regardless of proof of actual impairment.

Although the Board did not need a finding of actual impairment to show a violation of any rules, the Board made a specific finding that alcohol actually impaired Remus's mental ability. During the high-speed chase, when a car pulled into the street in front of Bohling, Remus encouraged Bohling to "Knock *** the fuckers off the road." After Lanigan shot at Simmons's car, Remus said, "I like that...boom, boom, boom." He added, "Kill him! Kill him! Fuck them!" When Holmes, in line with his duties, asked Remus for his gun, Remus said, "No motherfucker is going to take my weapon." These actions would reflect especially poorly on Remus if they resulted from sober reflection. Remus's conduct on June 2, 1999, supports the finding that alcohol impaired his mental ability to judge the correct manner of action and speech.

Next, Remus argues that the manifest weight of the evidence contradicts part of the Board's finding that Remus violated Department Rule 10.11. That rule provides:

> "Officers are required to report any deliberate or accidental discharge of firearms, except in the case of routine target practice.

Such reports are to be made in accordance with current Departmental procedures. \*\*\* When not in use, all weapons shall be kept in a secure place under lock and key."

Remus admits he violated the rule by storing his gun improperly in Bohling's car. He challenges the finding that he further violated the rule by failing to report that Lanigan fired his gun. He claims he had no opportunity to report the firing before the officers arrived at the Robbins police station, and officers there already knew of the shots fired. Remus does not dispute the Board's finding that none of the officers in the car made the requisite report to the communications center. He points out that a fellow officer made a call during the chase. Remus contends he reasonably assumed the officer made the requisite report in accord with the rule.

The officer who made the call to \*999, not the communications center, said only, "Shots fired." He never said whether an officer fired the shots. When Holmes questioned the officers at the station, all of them, including Remus, had an opportunity to identify the shooter. The evidence supports the finding that Remus, and all the other officers in the car, violated Department Rule 10.11 by failing to report that Lanigan fired his gun.

Similarly, the evidence supports the finding that all the officers in the car violated General Order 99—03, because they participated in a chase in an unmarked vehicle without siren or internal red lights, and without notice to the communications center.

Remus does not directly challenge the finding that his conduct violated the three rules that broadly permit the Sheriff to discipline employees whose conduct discredits the department. The first two rules provide:

"12.9 Any member of the Department \*\*\* who acts in a manner tending to bring discredit upon himself or the Department \*\*\* may be deemed incompetent and shall be subject to dismissal from the Department.

\* \* \*

13.1 Members shall conduct themselves on or off-duty in such a manner as to reflect favorably on the Department. Members will not engage in conduct which discredits the integrity of the Department or its employees or which impairs the operation of the Department."

The third rule, Department Rule 16.39, provides that "[a]ny act which brings or tends to bring the individual or the Department into disrepute" subjects the officer to disciplinary action. While Remus does not directly contest the finding that his acts violated these rules, he contends that his misconduct does not warrant dismissal.

The Board must not dismiss an officer without cause. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 589 (1991). The Board has cause to discharge an officer who shows "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer holding that position." *Kvidera v. Board of Fire & Police Commissioners*, 192 Ill. App. 3d 950, 963 (1989). We defer to the Board's conclusion that misconduct warrants dismissal. *Kappel*, 220 Ill. App. 3d at 589-90. Courts will not disturb the finding of cause for discharge unless the finding is arbitrary, unreasonable, or unrelated to the requirements of service. *Austin v. Civil Service Comm'n*, 247 Ill. App. 3d 399, 403 (1993). "Where the Board's findings are so trivial as to be unreasonable or arbitrary or are so unrelated to the requirements of service \*\*\*" (*Kvidera*, 192 Ill. App. 3d at 963), this court should reverse the dismissal.

Remus points out that he had no prior misconduct and three positive citations on his work record. He did not drive the car that chased Simmons and he did not fire a gun. He argues that his minor rule infractions do not justify dismissal.

Our courts have frequently emphasized that "a law-enforcement officer is in a unique position of public trust and responsibility." *Lewis v. Hayes*, 152 Ill. App. 3d 1020, 1025 (1987); see *Del Rivero v. Cahill*, 71 Ill. App. 3d 618, 623-24 (1979).

> "Discipline is not only vital but absolutely essential to this force of armed men who protect the life and property of the citizens in the city. Discipline is not only necessary for the proper functioning of the department but in addition if discipline were absent the Department would lose the respect of the public \*\*\*.
>
> \*\*\* It has long been settled in our state that there is no distinction between 'off duty' or 'on duty' misconduct by a police officer. \*\*\* By the very nature of his employment a police officer is in the eyes of the public and for the good of the department must exercise sound judgment and realize his responsibilities to the department and the public at all times." *Davenport v. Board of Fire & Police Commissioners*, 2 Ill. App. 3d 864, 869-70 (1972).

Officers must act in accord with "their most fundamental duty as law enforcement officers—to act to protect the public." *People v. Sorice*, 182 Ill. App. 3d 949, 956 (1989).

Remus failed to secure his gun properly, and he carried his gun in the car he took to an event and a bar where he had several beers. "Police officers, more than other public servants, must exhibit and maintain respect for the dangerous nature of weapons generally."

*Kappel*, 220 Ill. App. 3d at 593. However, the infraction here created much less danger than the illegal possession and sale of guns that justified Kappel's dismissal.

With his judgment somewhat impaired, Remus encouraged Bohling to chase Simmons, apparently over an argument that started because Simmons turned too close in front of Bohling. Remus did not try to control Lanigan when Lanigan took out his gun and fired at Simmons. The evidence supports a finding that Remus participated in a high-speed chase and the use of deadly force in an altercation that escalated from a slight traffic infraction. Remus's participation in his companions' severe misconduct calls for discipline.

The most significant rule violations occurred when Holmes asked about the incident. Remus stood mute as Lanigan lied about firing his gun. Remus lied about seeing muzzle flashes from Simmons's car. Later, he called his union because he had no intention of talking about the incident without an attorney protecting him. Remus chose to protect Bohling, Lanigan and himself by failing to disclose to police what he knew about the chase. He completely ignored his duties to uphold the law and protect the public.

When police officers fail to correct misinformation from their fellow officers, and lie to obstruct investigation into official misconduct, they have forsaken their central duties to protect the citizens of the community. Their obligations include a duty to protect citizens from the misconduct of fellow officers. If they prove unable to stop the misconduct, the integrity of the department requires full, prompt and honest disclosure of the facts concerning the incident. The Sheriff cannot act with integrity to protect the public from the wrongdoing of officers working for the department if their fellow officers help cover up the wrongdoing.

To retain the respect of the public as fair and impartial enforcers of the rule of law, police must police the police. The actions of Remus discredited the integrity of the department. Remus forsook the public and the officials who placed him in a position of great public trust. We cannot say that the Board acted arbitrarily or capriciously when it held the misconduct here sufficiently severe to require dismissal. Accordingly, we affirm the judgment of the trial court affirming the Board's decision to dismiss Remus from the department.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.