2022 IL App (1st) 201369
No. 1-20-1369
Opinion filed June 21, 2022

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| WILFREDO CINTRON JR. | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | Nos. 17 CH 5547 |
| THOMAS J. DART, in His Official Capacity as Sheriff of | ) | |
| Cook County; THE COOK COUNTY SHERIFF'S | ) | Honorable |
| MERIT BOARD; and COOK COUNTY, | ) | Anna H. Demacopoulos, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Walker and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    Cameras recorded an altercation in which several Cook County Jail correctional officers punched and kicked a handcuffed detainee. Plaintiff Wilfredo Cintron, the sergeant on duty, and the officers involved submitted reports claiming the detainee instigated the altercation. Expert witnesses testified at a Cook County Sheriff's Merit Board (Merit Board or Board) hearing that (i) the officers used excessive force, (ii) Cintron stood next to the officers during the incident, and (iii) his and the other officers' reports, which Cintron signed as well, did not accurately reflect what occurred.

¶ 2      The Merit Board terminated Cintron for violating multiple Cook County Sheriff's Office (Sheriff) orders on the use of excessive force, reporting uses of force, and submitting and approvingly signing false reports. On administrative review, the circuit court affirmed the Board's decision.

¶ 3      Cintron contends (i) the Board's finding that he violated Sheriff's orders was against the manifest weight of the evidence and (ii) terminating him was arbitrary and unreasonable. We affirm. The evidence supports the Board's findings. Further, we perceive nothing arbitrary or unreasonable or unrelated to the requirements of service in the Board's decision to discharge Cintron.

¶ 4                                      Background

¶ 5      Cintron worked as a correctional officer for the Sheriff assigned to Cook County Jail. As a sergeant, he oversaw a team of correctional officers and had additional supervisory duties such as personnel management and disciplinary responsibilities.

¶ 6      On May 4, 2012, a physical altercation broke out between several correctional officers, including Joel Mireles and Dale Frank, and detainee Jabari Funches. Cintron was the sergeant on duty. Recordings of the altercation taken from different angles showed that at least five officers surrounded Funches and punched and kicked him multiple times while Funches was in handcuffs. The recordings also show Cintron standing next to Frank while Frank repeatedly kicked Funches and Cintron having his hand on Mireles's back when Mireles pushed Funches into a wall.

¶ 7      Afterward, Cintron completed a "Response to Resistance/Use of Force Data Collection Report." Cintron did not have access to the recordings before filing the report. Cintron stated that Funches took a "combative stance" and "started to raise his hands" before Mireles hit him. Cintron added that Mireles struck Funches with an open hand and Frank helped restrain and handcuff

Funches. Other officers submitted reports with nearly identical descriptions, with one officer asserting nothing happened after the officers handcuffed Funches. No report detailed force more than an open hand strike. Cintron signed off on each of the reports.

¶ 8    Funches filed a complaint with the Sheriff's Office of Professional Responsibility (OPR). After conducting an internal investigation, OPR recommended the Merit Board fire Cintron.

¶ 9    At the Board's hearing, Richard Ellitch, the OPR investigator who conducted the internal investigation and drafted a written report of his findings, testified that he had interviewed Funches and some of the officers, including Cintron, and viewed the recordings. Ellitch said that the recordings contradicted the reports as Funches did not raise his hands before Mireles punched him. In Ellitch's opinion, the force was unjustified. Also, Cintron stood next to Frank while Frank kicked Funches and Cintron had his hand on Mireles's back when Mireles pushed the handcuffed Funches against a wall. Again, based on his investigation, this use of force was unjustified, and Cintron, Mireles, and Frank violated the Sheriff's order prohibiting officers from making false official reports. Ellitch concluded that Cintron's actions warranted termination.

¶ 10    James Hart testified at the hearing as an expert witness on the use of force and report writing. Hart authored a report based on the OPR reports, the officers' statements, and the recordings. Hart testified (i) Mireles and Frank unjustifiably used excessive force against Funches and (ii) Cintron violated Sheriff's orders prohibiting the filing of false reports, requiring officers to intervene during an excessive force incident, requiring officers to report all uses of force, and another specific to sergeants' duties.

¶ 11    Cintron testified that, although present during the altercation, he focused on Frank handcuffing Funches and did not see Frank kick Funches. Cintron denied seeing Mireles push Funches's head into a wall. As for his silence on the use of excessive force in his report, Cintron

said that he did not see it or remember seeing it when he prepared the report. He completed his report and signed off on the other reports one hour and twenty minutes after the incident.

¶ 12    Cintron acknowledged that the recordings conflict with his report that Funches raised his hands to Mireles before the altercation. Cintron also acknowledged that he testified he was positioned at the guard station at Mireles's trial and could not have seen the initial confrontation. Cintron said he based his report on his memory.

¶ 13    The Board found that the Sheriff proved by a preponderance of the evidence that Cintron violated seven Sheriff's orders regarding the use of excessive force, reporting uses of force, and submitting and signing off on false reports. The Board ordered Cintron's termination.

¶ 14    Cintron filed a petition for administrative review, later adding several counts questioning the Board's composition, which were dismissed on the *de facto* officer doctrine. In the remaining count, Cintron argued that the Board's decision was against the manifest weight of the evidence. The trial court affirmed the factual findings but remanded for the Board to articulate its reason for ordering termination rather than another form of discipline.

¶ 15    The Board issued a new decision, nearly identical to its earlier one, except it included the finding that Cintron violated the Sheriff's orders by not documenting the incident and not intervening when Mireles pushed Funches against a wall. Again, the Board ordered Cintron's termination without reasons.

¶ 16    Cintron filed another petition for administrative review. Cintron argued that the decision was arbitrary because the Board did not provide a reason for choosing termination. The trial court ordered supplemental briefing on a recent case reaffirming that a court on administrative review needs only determine whether the decision to terminate was neither arbitrary nor unreasonable and related to the requirements of service based on the entire record and findings made by the Board.

*Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399. Relying on *Rios*, the trial court affirmed the Board's decision.

¶ 17                                    Analysis

¶ 18                        Manifest Weight of the Evidence

¶ 19    Cintron contends the Board's decision to terminate him was against the manifest weight of the evidence. In an appeal from the judgment of an administrative review proceeding, we review the administrative agency's decision and not the circuit court's decision. *Krocka v. Police Board*, 327 Ill. App. 3d 36, 46 (2001). The scope of review of an administrative agency's decision on discharge requires a two-step analysis. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 550 (1981). We determine if the administrative agency's findings of fact are contrary to the manifest weight of the evidence. *Id.* In doing so, we treat the findings and conclusions of the administrative agency as *prima facie* correct. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588 (1991). We do not reweigh the evidence or substitute our judgment for the agency's. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006). When sufficient evidence in the record supports an administrative agency's findings, the decision will not be reversed. *Id.*

¶ 20    Then, we determine if the findings of fact provide a sufficient basis for the Board's conclusion that cause for discharge existed. *Crowley v. Board of Education of the City of Chicago*, 2014 IL App (1st) 130727, ¶ 29. The Board sits in the best position to resolve the effect of an officer's conduct on the operations of the department, so we give considerable deference to its determination of cause. *Robbins v. Department of State Police Merit Board*, 2014 IL App (4th) 130041, ¶ 39.

¶ 21    Cintron argues that the expert witness testimony does not support the Board's findings of fact. Both Ellitch and Hart viewed the recordings of the incident and based their testimonies on them. Ellitch testified that the recordings show Frank kicking Funches while Cintron stood next to him and Mireles pushing Funches into a wall while Cintron had his hand on Mireles's back. Hart testified similarly.

¶ 22    Both Ellitch and Hart testified that Cintron failed to document in his report that Frank kicked Funches and Mireles pushed Funches into a wall. Hart testified that Cintron's report contained false information: Cintron claimed force was justified because Funches took a combative stance and raised his hands towards Mireles. But Cintron later acknowledged the recordings show that, from where he stood, he could not have seen how the altercation began. Hart testified that the recordings show that after Mireles struck Funches, Funches's hands went up as his body rocked backward, supporting the Board's findings.

¶ 23    Cintron argues that his testimony was unrebutted. Not so. Instead, the Board relied on Hart's testimony. Cintron also argues that he did not have access to the recordings of the incident before writing his report, and his reports accurately reflected what he recalled. But Cintron drafted the report only 1 hour and 20 minutes after the incident and failed to include essential details such as Frank kicking Funches and Mireles pushing Funches into a wall while handcuffed. In the recordings, Cintron was positioned to observe these occurrences. Thus, the recordings and Hart's testimony rebut Cintron's testimony.

¶ 24    The Board considered the testimony of Ellitch, Hart, and Cintron. It concluded that sufficient evidence supported the violation of seven orders, particularly the recordings, and could not say "the opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of*

*Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Thus, the Board's finding was not against the manifest weight of the evidence.

¶ 25                                             Cause to Discharge

¶ 26    Cintron maintains that the Board's findings do not provide a sufficient basis for discharging him. A police officer may not be discharged without cause. 65 ILCS 5/10-1-18(a) (West 2020). "Cause" means " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his [discharge].' " *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983) (quoting *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 360 (1963)). Because the Board, and not the reviewing court, stands in the best position to determine the effect of an officer's conduct on the department, the reviewing court gives the Board's determination of cause heavy deference. *Valio v. Board of Fire & Police Commissioners*, 311 Ill. App. 3d 321, 330-31 (2000). Illinois courts have recognized that "police departments, as paramilitary organizations, require disciplined officers to function effectively and have accordingly held that the promotion of discipline through sanctions for disobedience of rules, regulations and orders is neither inappropriate nor unrelated to the needs of a police force." *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007). Thus, our review is limited to whether the agency's decision was arbitrary and unreasonable or unrelated to the requirements of service. *Id.*

¶ 27    The Board determined Cintron's conduct sufficiently severe to warrant discharge. This conduct included witnessing excessive force used against Funches, falsely reporting what he saw on a "Response to Resistance/Use of Force Data Collection Report," and failing to document what

he witnessed on that report. The Board concluded that Cintron's actions violated general orders, Sheriff's orders, and Board rules and regulations.

¶ 28    Cintron contends that his termination was arbitrary because, on remand, the Board failed to connect its decision to terminate to why it was proper. But, as long as evidence supports the decision, the Board need not explain itself. *Rios*, 2020 IL App (1st) 191399, ¶ 29. In *Rios*, this court held, "the Board's order accurately recited the evidence adduced at the hearing" and that "evidence certainly supports the Board's conclusion" that the officer violated the rules. *Id.* ¶ 30. The Board's decision in *Rios* was made "based on the evidence presented" and "after assessing the credibility of the witnesses." (Internal quotation marks omitted.) *Id.* ¶ 23. This is the same language used here to justify the Board's decision.

¶ 29    The evidence from witness testimony and the recordings show that Cintron submitted an inaccurate report on the use of excessive force and approved his subordinates' false reports. As noted, the Board found Cintron's actions violated seven orders. Thus, the Board's decision to terminate him was not arbitrary.

¶ 30    Cintron disputes that he used excessive force, so the Board's decision was unreasonable. Although Cintron did not directly use force, the evidence established he allowed his subordinates to use excessive force, failed to report the incident accurately, and signed off on false reports. Similarly, in *Remus v. Sheahan*, 387 Ill. App. 3d 899, 905 (2009), we upheld the Board's decision to terminate an officer who encouraged other officers to chase a car and shoot at it. The court found that the officer's most significant rule violations were lying about the incident and failing to report on it accurately. *Id.*

¶ 31    According to Cintron, the Board should have considered comparators in determining his penalty. Specifically, Officer Frank's penalty should have been considered. Cintron cites *Roman*

*v. Cook County Sheriff's Merit Board,* 2014 IL App (1st) 123308, where the court considered and compared the penalties of five officers based on their role in the incident. Unlike *Roman*, no evidence in the record shows Frank's role or penalty besides Cintron's testimony that he saw Frank return to work. The hearing officer also ruled that Frank's discipline was irrelevant to Cintron's violations. Thus, the Board's decision to terminate Cintron was not unreasonable.

¶ 32    Nor can we ignore that Cintron acted in his capacity as a sergeant. As in *Remus*, the Sheriff cannot fully perform the duty of protecting "the public from the wrongdoing of officers working for the department if their fellow officers help cover up the wrongdoing." 387 Ill. App. 3d at 905.

¶ 33    Given all this, we find the Board's decision to terminate Cintron was neither arbitrary nor unreasonable and related to the requirements of service.

¶ 34    Affirmed.

2022 IL App (1st) 201369

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-5547; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| **Attorneys for Appellant:** | Jacob D. Exline and Heidi Karr Sleper, of Kurtz, Sleper & Exline LLC, of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney (Lyle K. Henretty, Assistant State's Attorney, of counsel), and Robert T. Shannon, James M. Lydon, V. Brette Bensinger, Gretchen Harris Sperry, and Lari Dierks, of Hinshaw & Culbertson LLP, both of Chicago, for appellees. |