2025 IL App (1st) 240374-U

No. 1-24-0374

Order filed April 18, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JESUS CALLEROS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 07973 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE CALUMET | ) | |
| CITY FIREFIGHTERS PENSION FUND, | ) | Honorable |
| | ) | Sophia Hall, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The pension board's determination that plaintiff was not disabled and, therefore, not entitled to a line-of-duty disability pension was against the manifest weight of the evidence.

¶ 2     Plaintiff, Jesus Calleros, appeals from the judgment of the circuit court of Cook County,

which affirmed the decision of the Board of Trustees of the Calumet City Firefighters Pension

Fund (Board) denying him line-of-duty and non-duty disability pensions. On appeal, Calleros

contends the Board erred in giving greater weight to the opinions of certain physicians over others in concluding that he was not disabled. We agree and reverse.

¶ 3                                          I. BACKGROUND

¶ 4      Calleros, a Calumet City Fire Department firefighter/paramedic, applied to the Board for a disability pension in April 2021. On March 14, 2022, the Board held a hearing on Calleros's application where it heard Calleros's testimony and admitted into evidence exhibits including medical records and reports by three independent medical evaluators retained by the Board. The following facts derive from the testimony and exhibits.

¶ 5      Calleros joined the Calumet City Fire Department as a firefighter/paramedic on August 2, 2007. Previously, Calleros worked for the Romeoville Fire Department and Darian-Woodridge Fire Protection District. Calleros reported no knee injuries with either fire department. While with the Calumet City Fire Department, Calleros reported left leg or knee pain in May 2011 and September 2012. In a note dated September 19, 2012, a doctor commented that a diagnostic image of Calleros's knees showed "no evidence of fractures, dislocations or arthritic changes." Calleros underwent physical therapy for his left knee in September 2012, and also complained to his primary care physician of left knee pain "on and off" in 2017 and 2018.

¶ 6                                          A. Injury

¶ 7      On April 20, 2020, Calleros participated in "step up driver's training." As part of the training, Calleros was required to climb on the back of a firetruck. While climbing on the platform, Calleros had all his weight on his left leg and "felt a pop" and "excruciating pain." The fire chief drove Calleros to the hospital where he received treatment and underwent x-rays which revealed

no fracture or dislocation. Calleros was not cleared to return to work. Two days after the injury, Calleros was referred to physical therapy.

¶ 8                                                B. Treatment

¶ 9     On April 27, 2020, Calleros saw Dr. Brian Forsythe who ordered an MRI which showed a left knee medial meniscus tear. On May 8, 2020, Calleros underwent surgery on his left knee. Post-surgery, Dr. Forsythe recommended additional physical therapy.

¶ 10     On May 15, 2020, Calleros began physical therapy at ATI Physical Therapy (ATI). Notes from June, July, and August 2020 state that Calleros's condition improved but impairments limited his ability to ascend and descend stairs, kneel, and lift from the floor. ATI recommended skilled therapy to allow Calleros to meet a Physical Demand Level (PDL) of Very Heavy, which is required of a firefighter. On August 31, 2020, Dr. Forsythe released Calleros to desk work only.

¶ 11     During this time, Calleros transferred care to Dr. Anuj Puppala.[1] On September 1, 2020, Dr. Puppala examined Calleros and found that his left knee showed a good range of motion with no pain or weakness.

¶ 12     On September 23, 2020, ATI noted that Calleros was "progressing very well with [left] knee strength and mobility" but was "slightly limited" by a meniscectomy to his right knee. ATI anticipated four more weeks of physical therapy and then a transition to work conditioning. On September 28, 2020, Calleros advised Dr. Puppala that he felt that he had good mobility, but the pain worsened with stairs and he felt weak with "various movements."

---

[1] On September 17, 2020, Dr. Puppala performed an arthroscopy and partial medial meniscectomy of Calleros's right knee. The sole basis for Calleros's application for benefits, however, is the injury to his left knee.

¶ 13    On October 8, 2020, Dr. Lawrence Lieber evaluated Calleros for an independent medical evaluation pursuant to Calleros's workers compensation claim. Dr. Lieber reviewed, *inter alia*, the MRI of April 29, 2020, which "confirm[ed] evidence of a medial meniscus tear," Dr. Forsythe's postoperative report, and records from Dr. Puppala and ATI.

¶ 14    According to Dr. Lieber, Calleros reported that "his left knee does not bother him with ambulation or sitting." But Calleros described pain while ascending and descending stairs and "stiffness about the left knee with popping and weakness." Dr. Lieber concluded that Calleros had reached maximum medical improvement, his "subjective complaints" regarding his left knee were "out of proportion to the physical examination and objective findings," and his "current symptomatology has no relationship" to the April 2020 incident. Therefore, according to Dr. Lieber, "further treatment to the left knee is not indicated necessary" and Calleros could "work without restrictions concerning his left knee."

¶ 15    In an October 23, 2020, note, ATI stated that Calleros progressed but had the same limitations described in prior notes and did not meet the PDL level for a firefighter. ATI recommended Calleros transition to work conditioning. On October 26, 2020, Calleros was discharged from ATI. That same day, Dr. Puppala noted that Calleros still had "occasional pain" in his left knee that worsened with squatting. Calleros returned to physical therapy.

¶ 16    In a December 8, 2020, note, ATI stated that Calleros presented the same impairments as before and demonstrated weakness in his left knee with shaking during weightbearing exercises. Dr. Puppala examined Calleros on December 9, 2020, finding that Calleros's range of motion had improved but pain was consistent. That same day, Dr. Puppala administered a cortisone injection to Calleros's left knee.

¶ 17    On January 8, 2021, Calleros was again discharged from physical therapy. ATI noted that Calleros could lift 115 pounds from floor to waist, more than required by his job, but he presented the same impairments described in previous notes, including trouble squatting, kneeling, and crawling. According to ATI, Calleros was "unable to reach his Very Heavy PDL as firefighter despite 38 sessions and thorough program with attempt to progress strength."

¶ 18    On January 29, 2021, at Dr. Puppala's recommendation, Calleros underwent another MRI of his left knee that revealed a horizontal oblique tear of the medial meniscus, a Grade 1 tibial collateral ligament sprain, and improving pes anserine bursitis. On February 11, 2021, Dr. Puppala performed surgery to repair the tear, finding a "redundant suture and a loose anchor" and that "the meniscus tear had not healed." On February 25, 2021, a certified physician's assistant described Calleros's knee surgery as involving "not a new injury," but a "revision of the original failed surgery." Calleros was not permitted to return to work and returned to physical therapy.

¶ 19    According to a March 15, 2021, physical therapy note, Calleros presented with the same limitations described in notes preceding the second surgery. During a visit with Dr. Puppala on March 24, 2021, Calleros reported pain while squatting and ascending stairs. Calleros was again not permitted to return to work.

¶ 20    On April 9, 2021, Calleros was again discharged from physical therapy. His discharge summary described the same limitations as previous notes. ATI recommended Calleros transition to work conditioning to reach the Very Heavy PDL. On May 10, 2021, and June 1, 2021, Dr. Puppala again determined that Calleros could not return to work.

¶ 21    On June 18, 2021, ATI conducted a Functional Capacity Assessment (FCA). The FCA determined that Calleros's PDL capabilities fell below the Very Heavy requirements for a

firefighter. Calleros could only perform at a "Medium to Heavy" level. Due to Calleros's "reported and demonstrated limitations," he could only perform "squatting, crawling, and kneeling" on an "occasional basis."

¶ 22                                    C. Pension Application

¶ 23    On April 7, 2021, pursuant to section 4-110 of the Pension Code (40 ILCS 5/4-110 (West 2020)), Calleros applied to the Board for a line-of-duty disability pension. At the hearing, Calleros amended his application to request, in the alternative, a non-duty disability pension pursuant to section 4-111 of the Pension Code (40 ILCS 5/4-111 (West 2020)).

¶ 24    In support of his application, Calleros claimed that he was permanently disabled and could no longer perform the duties of a firefighter/paramedic because he had limited mobility in his left knee resulting from a work injury.

¶ 25    The Board selected three independent medical evaluators to assess the nature and extent of Calleros's alleged disability, Dr. Ryon Hennessy, Dr. Hythem P. Shadid, and Dr. Thomas F. Gleason.

¶ 26                                    1. *Dr. Gleason*

¶ 27    Dr. Gleason evaluated Calleros on July 20, 2021, and determined that he suffers from a disabling condition, namely, "a painful left knee with degenerative disease and chondromalacia," which precluded him from performing the "full and unrestricted" duties of a firefighter like climbing ladders, squatting, crawling, and kneeling. Dr. Gleason reviewed notes from Drs. Forsythe, Puppala, and Lieber, the FCA, Calleros's job description, and the MRI reports. He noted the January 29, 2021, MRI, in particular, depicted a "horizontal oblique tear body of the medial meniscus." Gleason specifically noted that the FCA performed on June 18, 2021, which was

"determined to be valid," revealed that Calleros's "capabilities fell below the DOT level." He opined that the left knee precluded Calleros from:

"performing full and unrestricted fire fighting duties, in as much as, responsibilities include operating and climbing ladders as well as other activities including squatting, crawling, and kneeling relating to entering burning structures, searing and rescuing trapped individuals, and rescuing persons from danger."

¶ 28    Dr. Gleason opined that the "act" or "cumulative effects" of firefighting duty, specifically, climbing the firetruck ladder, caused Calleros's disability and that he is permanently disabled, as his condition "[h]as lasted for a continuous period of not less than 12 months," and "can be expected to last for a continuous period of not less than 12 months."

¶ 29                                    2. *Dr. Shadid*

¶ 30    Dr. Shadid evaluated Calleros on July 14, 2021, and determined that he does not suffer from a disabling condition. Dr. Shadid reviewed the MRI reports, records from Drs. Forsythe, Puppala, and Lieber, and physical therapy notes. However, the list of medical reports did not include the FCA dated June 18, 2021. Dr. Shadid noted that Calleros had two "common" left knee diagnoses, "[s]tatus post left knee partial medial meniscectomy" and "[l]eft knee chondrolomalacia patella," but it is "highly uncommon for either of these conditions to be disabling." Rather, "[h]igh level professional athletes and laborers who put high demand stresses on their knees are able to perform at a high level with more advanced stages of these conditions." Also, Calleros's ability to dead lift "very well" precluded the partial medial meniscectomy "as a cause for any current disability as an axial pressure on the knee such as in a dead lift *** could aggravate a meniscal condition."

¶ 31    Dr. Shadid noted that Calleros reported "significant pain with a squat, stair climb or ladder climb," and although these activities can "aggravate" a patella condition, "his chondromalacia patella was objectively mild on his MRI." Thus, according to Dr. Shadid, Calleros's "current subjective complaints are out of proportion to the objective findings." Dr. Shadid noted that Calleros's symptoms "[h]ave not lasted for a continuous period of not less than 12 months," but instead, "per his admission are intermittent," "not as severe as *** prior to his surgery," and "not expected to last for a continuous period of not less than 12 months."

¶ 32    Dr. Shadid added that Calleros had morbid obesity, a "cause and aggravator of anterior knee pain," and had a history of left knee problems predating April 2020. Dr. Shadid concluded:

> "While there is no known additional medical treatment that would reliably change [Calleros's] subjective complaints, objectively he is capable of returning to full and unrestricted duty as a firefighter. Range of motion and strength of the left knee is intact and there are no signs of internal knee derangement or findings consistent with functional limitation that would preclude him from returning to full and unrestricted firefighter duties."

¶ 33                                    3. *Dr. Hennessy*

¶ 34    Dr. Hennessy evaluated Calleros on October 15, 2021, and determined that he "is not disabled" and could "perform his full and unrestricted duties as a firefighter." Dr. Hennessey reviewed Calleros's job description, records from Drs. Puppala, Forsythe, and Lieber, the FCA, and physical therapy notes. Dr. Hennessy also reviewed the January 29, 2021, MRI, which, according to Dr. Hennessy, depicted "posterior meniscus degeneration, but no evidence of recurrent tear."

¶ 35    According to Dr. Hennessy, Calleros had a "nearly normal exam of his left knee when compared to the right," with "full extension" but "mild crepitus." During the examination, Calleros demonstrated that he could only kneel and stand by "holding onto something," which "did not appear exaggerated." Calleros advised that his left knee "hurt in the anterior medial portion, and the patellofemoral joint up to the thigh." According to Dr. Hennessy, this "was essentially true with squatting, heavy lifting, or kneeling." Notwithstanding, Dr. Hennessy agreed with Dr. Lieber's opinion of October 8, 2020, that Calleros was "capable of full duty work without restrictions relative to his left knee on the date of injury April 20, 2020."

¶ 36    Dr. Hennessy determined that Calleros's current complaints did not render him disabled and were unrelated to the April 20, 2020, injury, but rather, related to the "preexisting degenerative" changes that Calleros has complained about since 2012. According to Dr. Hennessy, Calleros's "morbid obesity contributed to the natural progression of those preexisting degenerative changes."

¶ 37                              D. Calleros's Testimony

¶ 38    Calleros testified that during Dr. Hennesy's examination, it was "difficult" to kneel and he "needed assistance from the doctor's table" in order to stand. During Dr. Shadid's examination, Calleros experienced "a lot of pain" while stepping forward and backward across a step. At the time of the hearing, Calleros took an anti-inflammatory medication for his left knee, experienced "pain and weakness" on stairs, and had problems squatting, kneeling, and crawling. He stated that he would be unable to anchor himself while pulling a hose, kneel to operate nozzles, and ascend or descend ladders while wearing firefighting gear or carrying an individual.

¶ 39   On cross-examination, Calleros testified that he participated "[a] hundred percent" during the examinations by Drs. Hennessy, Shadid, and Gleason. He presently worked at a firearm shop and sometimes lifted 50-pound boxes of ammunition using a "dead lift motion" with "very little knee flexion." On redirect examination, Calleros testified that during the FCA he did not wear firefighting gear, which could weigh 50 to 70 pounds.

¶ 40   On examination by the Board, plaintiff acknowledged that he had met his "lifting objective" in lifting more than 100 pounds on January 8, 2021, but explained it was "painful" and "more of a dead lift motion and not like an actual squatting like how you would lift someone from the floor."

¶ 41                                      E. Board's Decision

¶ 42   The Board denied Calleros's request for line-of-duty and non-duty disability pensions. In its decision, the Board concluded that Calleros failed to prove that he was disabled. The Board noted that Drs. Lieber, Hennessy, and Shadid concluded that Calleros had "fully recovered from his April 20, 2020, knee injury by October 8, 2020," the date of Dr. Lieber's examination, and that Dr. Puppala's contemporaneous medical records reflected that Calleros's left knee "had a full range of motion without pain or instability."

¶ 43   The Board observed that although Dr. Shadid had diagnosed Calleros with post left knee partial medial meniscectomy and left knee chondromalacia patella, he also noted that those diagnoses are "highly uncommon for disabling conditions" and individuals who have those conditions "in a much more advanced state" are "capable of performing full and unrestricted firefighting duties." The Boarded noted that Dr. Shadid found that Calleros could deadlift "very well," which is "not consistent with a partial medial meniscectomy as the cause of any current

disability," and that Dr. Shadid concluded that Calleros's "current subjective complaints of pain were not symptomatic of the injury he suffered on April 20, 2020." As for Dr. Hennessy, the Board noted that he found that Calleros's left knee was "nearly normal to his right knee" and any preexisting conditions were not disabling, and, like Dr. Shadid, Dr. Hennessy observed that "[Calleros's] morbid obesity aggravates anterior knee pain and pre-existing issues with [his] left knee."

¶ 44    The Board stated that it placed "greater weight" on the opinions of Drs. Lieber, Hennessy, and Shadid than on the opinion of Dr. Gleason. The Board noted that Dr. Gleason found "no issues with [Calleros's] left lower extremity and, like Dr. Shadid and Dr. Hennessy, [Dr. Gleason found] the left leg is the same as the right leg with no negative range of motion issues and no pain." The Board explained that it "completely discounts" Dr. Gleason's report when his physical examination "show[ed] no problems with [Calleros's] lower left extremity," and Dr. Gleason "overreli[ed] on a Functional Capacity Assessment that he did not observe and [was] performed by a physical therapist."

¶ 45    On August 16, 2022, Calleros filed a complaint for administrative review in the circuit court.[2] On January 18, 2024, the circuit court affirmed the Board's decision, concluding that the Board's findings were not against the manifest weight of the evidence.

¶ 46                                    II. ANALYSIS

---

[2] The Board made its decision on July 8, 2022. The decision, however, was not mailed to Calleros until July 13, 2022. Therefore, service was complete on July 13, 2023. See 56 Ill. Admin. Code § 300.1160(a), amended at 38 Ill. Reg. 18517 (eff. Aug. 22, 2014) ("[s]ervice shall be presumed to be accomplished upon mailing or emailing"). Thus, Calleros had 35 days after July 13, 2022, to file a complaint for administrative review in the circuit court. *Rodriguez v. Sheriff's Merit Commission of Kane County*, 218 Ill. 2d 342, 350 (2006) (the "filing period" began on the date the administrative agency "mailed its decision"). Calleros's complaint for administrative review filed on August 16, 2022, was thus timely.

¶ 47    In an administrative review appeal, we review the administrative agency's decision rather than the circuit court's decision. *Cintron v. Dart*, 2022 IL App (1st) 201369, ¶ 19. Here, our review is focused on the Board's decision. Section 3-148 of the Pension Code (40 ILCS 5/3-148 (West 2020)) provides that judicial review of a decision of the Board is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)). See *McCumber v. Board of Trustees of the Oswego Fire Protection District Firefighters' Pension Fund*, 2019 IL App (2d) 180316, ¶ 45. Under the Administrative Review Law, "our review extends to all questions of fact and law presented by the entire record." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

¶ 48    The standard of review depends on whether the question is one of fact, one of law, or a mixed question of law and fact. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 29. Regardless of which standard applies, "a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi*, 225 Ill. 2d at 532-33.

¶ 49    Whether the evidence of record supports the Board's denial of a plaintiff's application for a disability pension is a question of fact. *Id.* at 534. An agency's findings of fact are considered *prima facia* true and correct. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 56. It is within the Board's province to assign the appropriate weight to the evidence, resolve conflicts, and determine the credibility of the witnesses. *Prawdzik v. Board of Trustees of the Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 36. However, a reviewing court's deference to the Board is not limitless (*Ashmore v. Board of Trustees of the Bloomington Police Pension Fund*, 2018 IL App (4th) 180196, ¶ 41), as there must be "competent evidence" in the

record to support its findings (*Miller v. Board of Trustees of the Oak Lawn Police Pension Fund*, 2019 IL App (1st) 172967, ¶ 40). A reviewing court may not reweigh the evidence or make an independent determination of the facts. *Hoffman v. Orland Firefighters' Pension Board*, 2012 IL App (1st) 112120, ¶ 18.

¶ 50    A firefighter is entitled to a line-of-duty pension if,

"as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, [the firefighter] is found, pursuant to Section 4-112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension." 40 ILCS 5/4-110 (West 2020).

¶ 51    A firefighter is entitled to a non-duty disability pension if,

"having at least 7 years of creditable service [the firefighter] becomes disabled as a result of any cause other than an act of duty, and who is found, pursuant to Section 4-112, to be physically or mentally permanently disabled so as to render necessary his or her being placed on disability pension." 40 ILCS 5/4-111 (West 2020).

¶ 52    A permanent disability is "any physical or mental disability that (1) can be expected to result in death, (2) has lasted for a continuous period of not less than 12 months, or (3) can be expected to last for a continuous period of not less than 12 months." 40 ILCS 5/4-105b (West 2020).

¶ 53    Here, the Board reviewed Calleros's testimony, medical records, and the reports made by the independent medical evaluators and determined Calleros was not disabled. This determination was against the manifest weight of the evidence.

¶ 54 It is undisputed that Calleros was injured on April 20, 2020, and that Calleros's pain has not resolved at any time since that incident. An MRI taken on April 27, 2020, showed a left knee medial meniscus tear which required surgery. Post surgery, Calleros began regular physical therapy visits. Throughout his time at physical therapy, Calleros's condition improved but continued impairments limited his ability to ascend and descend stairs, kneel, and lift from the floor.

¶ 55 Dr. Lieber reviewed Calleros's April 2020 MRI and medical records from Calleros's doctors. Following an examination on October 8, 2020, Dr. Lieber found that Calleros's subjective complaints were disproportionate to the physical examination and concluded that Calleros could "work without restrictions concerning [Calleros's] left knee."

¶ 56 Calleros continued his physical therapy visits where he presented with the same impairments as before with weakness in his left knee. On January 29, 2021, Calleros obtained another MRI on his left knee that revealed, among other things, a horizontal oblique tear of the medial meniscus. This revelation was consistent with Calleros's complaints and contrary to Dr. Lieber's findings. Dr. Puppala performed surgery and found a "redundant suture and loose anchor" and that "the meniscus tear had not healed." Calleros continued to present with the same limitations in physical therapy. Calleros's FCA on June 18, 2021, determined that his PDL capabilities fell below the Very Heavy requirements for a firefighter. Because of Calleros's demonstrated limitations he could only perform "squatting, crawling, and kneeling" on an "occasional basis."

¶ 57 Dr. Gleason, one of the independent medical evaluators selected by the Board to assess the nature and extent of Calleros's disability, found that Calleros had reached maximum medical improvement and that "no additional medical treatment ***would reasonably be expected to return

[him] to full and unrestricted duty as a fire fighter." Dr. Gleason opined that Calleros was permanently disabled, as his condition has "lasted for a continuous period of not less than 12 months," and "can be expected to last for a continuous period of not less than 12 months." He noted that Calleros suffered from a disabling condition that precluded him from performing the full and unrestricted duties of a firefighter.

¶ 58    While two of the three independent medical evaluators selected by the Board, Drs. Hennessy and Shadid, opined that Calleros was not disabled, we find that it was improper for the Board to assign more weight to those opinions than Dr. Gleason's opinion. Dr. Hennessy's ultimate conclusion was that he agreed with Dr. Lieber's opinion of October 8, 2020, that Calleros was "capable of full duty work without restrictions relative to his left knee on the date of injury April 20, 2020." It is critical to note, however, that Dr. Lieber's opinion had been given prior to Calleros's second surgery. Moreover, Dr. Hennesy found that the January 2021 MRI did not show evidence of a recurring tear, yet the MRI report noted a tear of the medial meniscus, and the subsequent surgery revealed a "redundant suture and a loose anchor," and that "the meniscus tear had not healed." Accordingly, the Board erred in assigning greater weight to Dr. Hennessy's opinion.

¶ 59    Dr. Shadid noted in his evaluation that Calleros reported "significant pain with a squat, stair climb or ladder climb," but that Calleros's "subjective complaints are out of proportion to the objective findings." Dr. Shadid found that "objectively," Calleros was capable of returning to full and unrestricted duty as a firefighter, while admitting that "there is no known additional medical treatment that would reliably change [Calleros's] subjective complaints." However, Dr. Shadid's report failed to mention the FCA or address all the records documenting Calleros's limitations

during work hardening, which specifically stated that Calleros was unable to reach "Very Heavy" PDL as required to be a firefighter.

¶ 60    Dr. Gleason, on the other hand, discussed the specific duties that Calleros could not perform, and took into account Calleros's second surgery and the FCA results. Additionally, Dr. Puppala's conclusion that Calleros could not return to work was corroborated by the FCA results and Calleros's testimony. We cannot find that this is simply a case of conflicting evidence. Rather, there was abundant medical evidence presented showing that Calleros was disabled such that he was unable to perform in a full-duty capacity as a fireman. The reports of Drs. Puppala and Gleason, the evaluations from ATI, and the results of the FCA, specifically support the finding that Calleros was disabled as a result of his April 20, 2020, injury that occurred during training, and that he was unable to perform at "Very Heavy" PDL. These reports and results were more reliable than the examination conducted by Dr. Hennessy, in which he based his opinion on results obtained before Calleros's second surgery, or by Dr. Shadid, in which he failed to mention the latest FCA in his report. Drs. Hennessy and Shadid failed to consider relevant, material evidence that was key under the circumstances of this case. See *Wade v. City of North Chicago Police Pension Bd.*, 226 Ill. 2d 485, 507 (2007).

¶ 61    We find this case to be similar to *Hampton v. Board of Trustees of Bolingbrook Police Pension Fund*, 2021 IL App (3d) 190416. In *Hampton*, the plaintiff's shoulder was injured after his squad car was struck by another car while he was on duty. *Id*. ¶ 3. An MRI revealed "moderate glenohumeral osteoarthritis with an associated superior labral tear." *Id*. ¶ 5. "A Bankart lesion was present, along with a Hill-Sachs deformity." *Id*. An orthopedic surgeons found that the plaintiff had left shoulder pain due to "degenerative joint disease, a labral tear, and a possible Bankart

lesion, with shoulder stiffness." *Id*. The surgeon ordered a Functional Capacity Evaluation (FCE) by ATI, which resulted in a recommendation that the plaintiff return to modified duty. *Id*. ¶ 7.

¶ 62    Thereafter, the plaintiff underwent an independent medical exam. The doctor determined that the plaintiff had an underlying glenohumeral osteoarthritis that was aggravated by the work incident. *Id*. ¶ 8. He recommended that the plaintiff return to work with restrictions of no pushing, pulling, or lifting greater than 20 pounds with the left shoulder, no over-the-shoulder use, and not being put into a position of altercations. *Id*. The plaintiff was then examined by three physicians at the Board's discretion. One orthopedic surgeon certified the plaintiff disabled, while the other two doctors found the plaintiff to not be disabled. *Id*. ¶ 10-11. The Board denied the plaintiff's claim for line-of-duty disability pension benefits. *Id*. ¶ 13. The Board discounted the plaintiff's testimony, finding it not wholly consistent with record evidence. *Id*.

¶ 63    The trial court reversed the Board's decision, finding that it was against the manifest weight of the evidence. *Id*. ¶ 14. It found that there were inherent defects in the opinions of two of the doctors. *Id*.

¶ 64    On appeal, the court found that one of the doctor's opinions the Board assigned greater weight to had been based on a 2017 FCE that concluded the plaintiff could return to work within the FCE guidelines. *Id*. ¶ 21. The court noted that the doctor did not consider the fact that the FCE also indicated that the shoulder injury posed an unacceptable risk if the plaintiff's job required him to be involved in a physical altercation or a situation that required physical force. *Id*. The court found that the doctor's conclusions were inconsistent with the facts available to him. *Id*. The court also found that the second doctor's opinion that the injury was not permanent was inconsistent

with the facts in the record, namely, that the plaintiff's pain had not resolved at any time since the accident. *Id*. ¶ 22.

¶ 65    Similarly here, we conclude that Dr. Hennessy's and Dr. Shadid's opinion that Calleros's injury was not permanent was inconsistent with the facts in the record, which show that Calleros's pain has not resolved at any time since the incident. Further, the Board erred in assigning greater weight to the opinions of Dr. Hennessy, and Dr. Shadid where Dr. Hennessy's opinion was based in part on Calleros's capabilities before his second surgery, and a misreading of the MRI, and Dr. Shadid's conclusions were inconsistent with facts in the record.

¶ 66    Finding that the Board's decision that Calleros was not disabled was against the manifest weight of the evidence, we now turn to whether his disability resulted from an act of duty or the cumulative effects of acts of duties. The Board found that even if Calleros was disabled, his disability was not incurred in or resulted from the performance of an act of duty or cumulative acts of duty. That finding was also against the manifest weight of the evidence.

¶ 67    Section 4-110 of the Illinois Pension Code states that if a firefighter, as the result of an accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, pursuant to section 4-112, to be physically disabled for service in the fire department, so as to render necessary his being placed on disability pension, the firefighter shall be entitled to a disability pension. 40 ILCS 5/4-110 (West 2018). An act of duty is defined in part as "[a]ny act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department ***." 40 ILCS 5/6-110 (West 2018).

¶ 68    Here, it is undisputed that Calleros was injured while performing acts which he was directed to complete as an employee of the Department. See *O'Callaghan v. Retirement Board of*

*Firemen's Annuity and Benefits Fund*, 302 Ill. App. 3d 579, 583 (1998 (plaintiff was an active fireman at the time of his injury, performing required training at the time of his knee injury, and therefore was injured during an act of duty).

¶ 69    To the extent that the Board argues that Calleros's had preexisting degenerative changes in his knee, or obesity, that caused his disability, we note that a disability pension may be based upon the line-of-duty aggravation of a preexisting physical condition. See *City of Peoria v. Firefighters' Pension Fund of the City of Peoria*, 2019 IL App (3d) 190069, ¶ 35 (a firefighter need not prove the acts of duty were sole or even the primary cause of the disability; a disability pension may be based upon the aggravation of a preexisting condition). It is undisputed that Calleros could perform full duties as a firefighter until April 20, 2020, the date of his injury, and was unable to reach "Heavy Duty" PDL after the injury. Accordingly, we find that because there was a sufficient nexus between his injury and the act of duty, the act of duty caused his disability. *Id.* (if there is a sufficient nexus between the injury and the acts of duty, the acts of duty need only be a causative or aggravating, contributing, or exacerbating factor to the disability).

¶ 70                                III. CONCLUSION

¶ 71    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County, set aside the decision of the Board, and remand the cause to the Board with directions that it grant Calleros a line-of-duty pension in accordance with section 4-110 of the Illinois Pension Code. 40 ILCS 5/4-110 (West 2020).

¶ 72    Reversed and remanded with directions.