2026 IL App (1st) 241876-U

No. 1-24-1876

First Division
June 22, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANTHONY MARRERO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 12695 |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY, and COOK COUNTY | ) | Honorable |
| SHERIFF'S MERIT BOARD, | ) | Thaddeus Wilson |
| | ) | Judge, Presiding. |
| Defendants-Appellants. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the Cook County Sheriff's Merit Board's decision to terminate plaintiff correctional officer for using excessive force against a detainee where the Board's decision was neither arbitrary nor unreasonable. The circuit court order to the contrary is reversed.

¶ 2    Following an administrative hearing, the Cook County Sheriff's Merit Board (Board) issued a decision granting the Cook County Sheriff's request to terminate plaintiff Anthony

- 1 -

Marrero's employment as a correctional officer for using excessive force against a detainee at the Cook County Jail. On administrative review, the circuit court affirmed the Board's finding that Officer Marrero used excessive force, but reversed his termination and remanded the matter for the imposition of a lesser punishment. On remand, the Board suspended Officer Marrero for 90 days and awarded him backpay and benefits. After another round of administrative review, the circuit court affirmed the 90-day suspension. The Board now appeals, arguing that its original decision to terminate Officer Marrero was not arbitrary or unreasonable. For the reasons that follow, we reverse the circuit court's order and reinstate the Board's decision to terminate Officer Marrero's employment.

¶ 3                          I. BACKGROUND

¶ 4      The record reveals that during a shift at the Cook County Jail on February 15, 2013, Officer Marrero came to the aid of another officer who was being assaulted by a detainee named Lee Brewer. Once Brewer was in handcuffs, Officer Marrero and Officer David Walker escorted him to a small holding cell. Inside the holding cell, Officer Marrero struck Brewer with his knee numerous times while he and Officer Walker held the still-handcuffed Brewer in the corner of the cell.

¶ 5      After investigating the February 15 incident, the Sheriff filed a complaint with the Board requesting Officer Marrero's termination for using excessive force against Brewer. In particular, the complaint alleged that Officer Marrero's repeated knee strikes violated Sheriff's Orders 11.2.1.0 and 11.2.20.0 governing the use of force against detainees.

¶ 6      At the hearing on the Sheriff's complaint, Officer Marrero testified that he began working for the Sheriff in 2002. On the day of the incident, he responded to Brewer's attack on another officer. Officer Marrero and others subdued Brewer and handcuffed his hands behind his back.

Officer Trevizo, a "rookie" officer, then began escorting Brewer to a holding cell. Officer Marrero saw Brewer pull away from Officer Trevizo, so he and Officer Walker again stepped in to assist. Officers Marrero and Walker bent Brewer over at the waist to gain compliance and ordered him to stop resisting.

¶ 7 Officer Marrero then escorted Brewer into the holding cell while Brewer was "still trying to pull away a little bit." Officer Walker entered the small cell and helped Officer Marrero push Brewer into the back corner. The officers attempted to get Brewer to kneel on the bench along the back wall of the cell, but he placed one leg on the bench and attempted to "donkey kick" Officer Marrero with the other. Officer Marrero began "delivering knee strikes to [Brewer's] thigh" while commanding him to stop resisting and kneel on the bench. Officer Marrero gave progressively stronger knee strikes as Brewer continued to be uncooperative. Eventually, Brewer kneeled on the bench, and the officers exited the holding cell safely.

¶ 8 Officer Walker testified that on the day of the incident he witnessed Officer Marrero and another officer "struggling" with Brewer and giving him verbal commands to stop resisting. Officer Walker approached, grabbed Brewer's arm, and helped handcuff Brewer's hands behind his back. Brewer was "very resistant" at this time by "squirming his body and cursing, threatening." Brewer continued to resist and defy verbal commands while Officers Walker and Marrero escorted him to a holding cell. As the officers tried to back out of the cell, Brewer was "trying to squirm away" and kick Officer Marrero. Officer Walker did not directly see Brewer trying to kick Officer Marrero, but he "perceived" at least one attempt. Officer Marrero then struck Brewer with his knee several times and Brewer stopped resisting. Immediately after the incident, Officer Walker completed a use-of-force statement that was consistent with his testimony. Officer Walker did not believe that Officer Marrero used excessive force at any time during the incident.

¶ 9      Erica Queen testified that she was a superintendent in the Records Department at the time of the incident. In that role, she reviewed the video and documents related to instances involving the use of force. She would report the case to OPR if she believed an officer used excessive force, or if there were discrepancies between an officer's report and the video.

¶ 10     In this case, Queen referred the matter to OPR because she considered the knee strikes used by Officer Marrero to be excessive. Queen testified that the knee strikes were the only aspect of the video she found troubling. She did not consider Brewer's previous assault of an officer in her review, but acknowledged that it would factor into a use-of-force analysis if Officer Marrero were aware of it.

¶ 11     James Hart testified as the Sheriff's expert on the use of force in correctional facilities. Hart began his career in corrections in 1975 and had numerous training courses in the use of force. However, he was not specifically trained in the John C. Desmedt use of force model, which is the model used by the Sheriff.

¶ 12     Hart reviewed various records in forming his opinion, including the video footage from jail, the incident and use-of-force reports, and the Sheriff's use-of-force policy. According to Hart, the video showed that Brewer "sort of stiffened himself" to resist entering the holding cell, but that Officers Marrero and Walker were able to push him into the corner by the bench. Based on this conduct, Hart classified Brewer as a "nonmoving resistor" under the Desmedt model. Hart further testified that, once pushed into the corner of the cell, Brewer was kneeling his left leg on the bench with his right foot flat on the ground. After approximately seven knee strikes from Officer Marrero, Brewer lifted his right foot slightly but "not in a kicking motion."

¶ 13     Hart also testified that the video did not show that Brewer was combative as described in Officer Marrero and Walker's reports, and that other officers in the area did not react to assist them

in subduing Brewer. Ultimately, Hart concluded that Officer Marrero's use of over ten knee strikes while Brewer was handcuffed and pushed into the corner of the cell were "unnecessary and, therefore, excessive." Hart reached this conclusion based on the totality of the circumstances, including the fact that Brewer had just struck another officer.

¶ 14    Chicago police officer James Klauba testified as Officer Marrero's use-of-force expert. Among other positions involving use-of-force training, Officer Klauba had worked as a police officer for 17 years and had been assigned as a use-of-force instructor for 10 years. Officer Klauba taught the Desmedt model on a full-time basis and also reviewed several use-of-force cases each month for the Chicago Police Department.

¶ 15    In this case, Officer Klauba reviewed the video, use-of-force reports, and the Sheriff's use-of-force orders in completing his evaluation of Officer Marrero's conduct. Officer Klauba opined that Officer Marrero's use of force was appropriate under the totality of the circumstances, including that Officer Marrero knew that Brewer had just struck another officer. Officer Klauba characterized the video as showing that Officer Marrero used "low impact pressure against a moving resister." Officer Klauba explained that this force was appropriate if Brewer was attempting to kick Officer Marrero as Officer Marrero claimed. According to Officer Klauba, the area of the knee strikes and Brewer's apparent lack of injury demonstrated that Officer Marrero was only attempting to overcome Brewer's resistance and force him to kneel on the bench so that the officers could safely exit the holding cell.

¶ 16    On June 7, 2019, the Board issued its decision to terminate Officer Marrero's employment. In reaching this conclusion, the Board acknowledged that the case was a "close call under the totality of the circumstances" given that Brewer had just assaulted another officer and that Officer Marrero was "required to make a series of split-second decisions" for the safety of himself and his

fellow officers. However, the Board continued that, "at least the last few knee strikes were administered at a time when [Brewer] appears on the video to be not actively resisting any longer." Thus, the Board found that Officer Marrero used excessive force and ordered that his employment with the Sheriff be terminated effective March 17, 2015.

¶ 17    Officer Marrero subsequently filed a complaint for administrative review in the circuit court, arguing, among other things, that (1) the Board's finding of excessive force was against the manifest weight of the evidence and (2) the decision to terminate his employment was arbitrary and unreasonable. In response, the Sheriff contended that the Board's findings were consistent with the evidence and that termination was neither arbitrary nor unreasonable.

¶ 18    On July 6, 2023, the circuit court issued a ruling finding sufficient evidence to support the Board's determination that Officer Marrero used excessive force against Brewer. However, the court also concluded, with little explanation, that Officer Marrero's conduct was "inconsistent with the ultimate employment punishment" of termination. In particular, the court noted that the Board acknowledged that the case was a "close call" and that Officer Marrero's record did not contain any other instances of similar misconduct. Accordingly, the court remanded the matter to the Board for the imposition of a penalty greater than a 30-day suspension but less than termination.

¶ 19    On remand, the Board suspended Officer Marrero for 90 days and awarded him certain backpay and benefits. After another round of administrative review, the circuit court affirmed the suspension. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    In a case of administrative review, this court reviews the decision of the Board rather than the circuit court's order. *Michno v. Cook County Sheriff's Office*, 2021 IL App (1st) 200933, ¶ 24. Our review of the Board's decision to terminate an employee is a two-step process. *Bless v. Cook*

*County Sheriff's Office*, 2024 IL App (1st) 230256, ¶ 37. First, we consider whether the Board's findings of fact are against the manifest weight of the evidence. *Id.* The Board's factual findings are entitled to great deference and are considered *prima facie* true and correct. *Id.* We must not reweigh the evidence or substitute our judgment for that of the Board. *Cintron v. Dart*, 2022 IL App (1st) 201369, ¶ 19. Instead, we will reverse a finding of fact only if, viewing the evidence in the light most favorable to the Board, no rational trier of fact could have agreed with the Board's decision, or if the opposite conclusion is clearly evident. *Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893, ¶ 76.

¶ 22     The second step is to determine whether the Board's findings of fact provide sufficient basis to terminate the employee. *Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399, ¶ 33. The Board's termination decision must be supported by "cause," which means a substantial shortcoming that renders the employee's continued employment detrimental to the discipline or efficiency of the office. *Id.* In evaluating the propriety of a termination decision, we again give considerable deference to the Board, as it is in a superior position to determine the effect of the employee's conduct on the office. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 33. Under this standard, the Board's decision to terminate an employee will be reversed only where the decision is arbitrary, unreasonable, or unrelated to the requirements of service. *Id.* ¶ 75.

¶ 23     Here, the parties agree that the Board's finding that Officer Marrero used excessive force is not before this court. Instead of challenging the finding of excessive force, Officer Marrero argues only that the magnitude of the force he used is insufficient to justify termination rather than some lesser punishment. To that end, Officer Marrero primarily argues that his termination was arbitrary and unreasonable by submitting unrelated cases in which officers accused of excessive force were not terminated. He contends that such a "comparator analysis" is pertinent here because

this court employed a similar manner of analysis in *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶¶ 144-152.

¶ 24    However, Officer Marrero's reliance on *Roman* is completely unavailing, as that case is readily distinguishable from the one at hand. *Roman* involved numerous cases that were consolidated because they stemmed from similar allegations that the officers involved were performing unauthorized secondary work at establishments that primarily sold alcohol. *Id.* ¶ 3. The Board terminated three of those officers, but merely suspended four others for periods ranging from 40 to 180 days. *Id.* ¶ 56. On appeal, this court reversed the terminations of two of the fired officers, reasoning that their punishment was "grossly disproportionate" to the suspensions given to the other officers who engaged in similar or even more egregious misconduct. *Id.* ¶¶ 151-52.

¶ 25    Here, in contrast, no other officers were accused of excessive force stemming from the incident with Brewer. See *Cintron*, 2022 IL App (1st) 201369, ¶ 31 (distinguishing *Roman* on this basis). Furthermore, the "comparative" examples submitted by Officer Marrero all involve cases in which the Board found that the accused officer did *not* use excessive force at all. Clearly, the fact that the Board found completely different uses of force to be appropriate in completely different circumstances has little bearing on whether Officer Marrero's termination was justified. We again note that Officer Marrero does not contest the Board's finding that he used excessive force, but instead argues only that the force was not *so* excessive as to justify termination.

¶ 26    We further emphasize that our task is *not* to decide what sanction we would have imposed in the first instance. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 67. Instead, giving all due deference to the Board, we must determine whether the Board's conclusion was supported by competent evidence. *Id.* In light of this deference owed to the Board, its decision will be overturned

only in the rare instance where it is so unreasonable or arbitrary as to be unrelated to the requirements of service. *Id.*

¶ 27    Based on our review of the record, we find that the Board's termination decision was not arbitrary or unreasonable. It is well-established that the violation of a single rule may constitute sufficient basis for termination. *Id.* ¶ 69. Sheriff's Order 11.2.1.0 prohibits the use of excessive force, which it defines to include both (1) striking a handcuffed and non-combative subject and (2) using force after a subject has stopped resisting and is under control. *Id.* Courts have also ruled that the "clear public policy" of eliminating the use of excessive force against inmates justifies terminating a correctional officer, even for the first offense. *Id.* ¶ 70.

¶ 28    Our review of the record—particularly the video evidence—shows that the Board was reasonable in determining that Officer Marrero violated the Sheriff's use of force policy. As is essentially undisputed by the parties, the video shows that Officer Marrero, with assistance from Officer Walker, pushed a handcuffed Brewer face-first into the back corner of the small holding cell. Officer Marrero held Brewer in the corner with Brewer's left leg awkwardly on the bench against the back wall and his right leg on the ground. Officer Marrero then delivers at least a dozen progressively-stronger knee strikes while Brewer appears completely noncombative and contained in the back corner of the cell.

¶ 29    Officer Marrero insists that Brewer was noncompliant during this time, even asserted that one of the alleged "donkey kicks" can be seen on camera "if watched closely." After our own careful review of the video, we disagree. Consistent with the Board's interpretation of the video, we find that although Brewer lifts his right leg slightly at the time cited by Officer Marerro, he does not do so at all aggressively or in a kicking motion. As noted by the Board at oral argument, we find it telling that Officer Marrero does not react to Brewer's alleged kick in any way and

simply carries on with his knee strikes unperturbed. Under these circumstances, we find that the Board's decision to terminate Officer Marrero was entirely reasonable.

¶ 30     As a final point, we note that Officer Marrero argues that (1) Officer Walker corroborated his testimony on Brewer's recalcitrance and (2) Officer Klauba was a superior expert to Hart because Officer Klauba was much more familiar with the Desmedt use-of-force model. However, these arguments essentially ask us to reweigh the evidence and substitute our own judgment for the Board's. We decline to do so. *Cintron*, 2022 IL App (1st) 201369, ¶ 19 ("We do not reweigh the evidence or substitute our judgment for the agency's"). In any event, the video evidence detailed above speaks for itself. In light of the video evidence of numerous knee strikes against a nonresisting detainee, we must conclude that the Board's termination decision was not arbitrary, unreasonable, or unrelated to the requirements of service.

¶ 31                                III. CONCLUSION

¶ 32     For the reasons stated, we reverse the judgment of the circuit court and affirm the Board's decision terminating Officer Marrero's employment.

¶ 33     Circuit court judgment reversed. Board decision affirmed.